**Gerald E. MEYER, Personal Representative of the Estate of Anna Holtz, et al., Plaintiffs/Respondents,**

v.

**David S. PURCELL and Purcell and Amen, LLC, Defendants/Appellants.**

**No. ED 97630.**

Missouri Court of Appeals, Eastern District, Division Two.

July 16, 2013.

---

Thomas Hayek, Jason Kinser (Co–Counsel), Brandon Dewitt (Co–Counsel), St. Louis, MO, for Appellant.

David Butsch, David Damick (Co–Counsel), St. Louis, MO, James Simeri (Co–Counsel), Clayton, MO, for Respondent.

LISA S. VAN AMBURG, Judge.

## INTRODUCTION

David S. Purcell and the law firm of Purcell & Amen LLC (collectively "Attorneys"), appeal from the judgment entered following a jury verdict in favor of the estates and trusts of Steve Boliance and Anna Holtz ("Estates") on claims for legal malpractice. Attorneys contend the trial court erred in: submitting to the jury the issue of punitive damages, jury instructions regarding punitive damages, submitting Estates' legal malpractice claims, excluding and admitting certain evidence, entering judgment against Attorneys for legal malpractice and denying their motion for new trial. We reverse the award of punitive damages and affirm in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2000, Boliance and Holtz created estate plans that included wills, trusts, and powers of attorney. In these estate plans, Boliance and Holtz designated how they intended their property to be distributed upon their deaths, choosing each other as their first personal representative, trustee, and attorney-in-fact, and selecting successor representatives, trustees, and attorneys-in-fact.

In the fall of 2007, Boliance and Holtz executed powers of attorney and medical directives prepared by Purcell. These new powers designated their great niece, Susan Zehnle, ("Niece") as their primary attorney-in-fact.

Following execution of these powers of attorney, Niece consolidated Boliance and Holtz's respective assets into two separate bank accounts and designated herself as a joint account holder on each account. Niece also retitled the house owned by Boliance and Holtz, adding herself as joint tenant, pursuant to the advice and counsel of Attorneys. Soon thereafter, Boliance died on December 4, 2007, and Holtz died on December 7, 2007. Upon their deaths, as a result of the retitling, Niece held sole title to and possession of substantially all of Boliance's and Holtz's property.

After retitling the property, Niece discovered Boliance's and Holtz's prior estate plans while searching the house for suitable burial clothing. She turned these documents over to Purcell on December 8, 2007. Purcell then contacted Estates' personal representatives and trustees in a letter dated December 10, 2007, informing that Niece had retitled Boliance's and Holtz's assets to include herself in joint capacity to avoid probate. Thereafter, Estates' representatives and trustees contacted Purcell in a letter dated December 21, 2007, and demanded an accounting and return of all Boliance's and Holtz's assets held by Niece. Over the course of the

next two months, neither Purcell nor Niece provided an accounting or returned Boliance's and Holtz's assets to Estates, despite Estates' repeated demands.

In March 2008, Estates filed a petition against Niece in probate court for discovery of assets. In May 2008, following the initiation of litigation by Estates solely against Niece for accounting and discovery of assets, Niece provided an accounting and returned assets totaling $860,689.96 to Estates. In the effort to recover these assets, Estates paid $256,896 in litigation fees to their attorney pursuant to a contingency fee agreement.

Thereafter, Estates sued Attorneys for legal malpractice, alleging Purcell was negligent for causing the transfer of Boliance's and Holtz's assets to Niece without regard to their estate plans and for failing to advise or assist Niece in providing an accounting or returning such assets to Estates. Following trial, the jury returned a verdict in favor of Estates finding Attorneys jointly and severally liable and awarding Estates $256,896, in compensatory and $600,000, in punitive damages. Attorneys subsequently filed a motion for judgment notwithstanding the verdict and a motion for new trial. The trial court denied these motions. Attorneys appeal.[1]

## DISCUSSION

■ In their first point, Attorneys contend the trial court erred in submitting the case to the jury on the issue of punitive damages because the evidence was insufficient to support an award of punitive damages. Specifically, Attorneys claim Estates failed to present the required clear and convincing evidence that Purcell acted with the requisite evil intent sufficient to support an award of punitive damages. We agree.

■ Whether there is sufficient evidence to support the submission of a punitive damages instruction is a question of law which we review de novo. *Scott Salvage Yard, LLC v. Gifford*, 382 S.W.3d 134, 137 (Mo.App. E.D.2012). In reviewing the submissibility of punitive damages, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff and disregard all contrary inferences. *Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d 60, 73 (Mo.App. E.D.2003).

■ Punitive damages are ordinarily not recoverable in actions for negligence "because negligence, a mere omission of the duty to exercise care, is the antitheses of willful or intentional conduct." *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985). However, if a defendant intentionally commits a wrongful act and knows at the time that it is wrongful, evil motive may be implied if he acted with reckless indifference to the rights or interests of others. *Hoyt v. GE Capital Mortg. Servs., Inc.*, 193 S.W.3d 315, 322 (Mo.App. E.D.2006); *Burnett v. Griffith*, 769 S.W.2d 780, 788 (Mo. banc 1989).

■ The standard for determining whether Estates made a submissible case depends upon whether a reasonable juror could have found Attorneys' conduct showed complete indifference to or a conscious disregard for Estates' rights. *Kaplan*, 166 S.W.3d at 73. A submissible case "requires clear and convincing proof that the defendant intentionally acted 'either by a wanton, willful or outrageous act, or

---

1. Attorneys' motion to dismiss due to violations of Rule 84.04(c), which was taken with the case, is hereby denied.

reckless disregard for an act's consequences (from which evil motive is inferred)." *Howard v. City of Kansas City*, 332 S.W.3d 772, 788 (Mo. banc 2011) (quoting *Werremeyer v. K.C. Auto Salvage Co.*, 134 S.W.3d 633, 635 (Mo. banc 2004)). "To satisfy the 'clear and convincing' standard of proof, evidence must show that the defendant either knew or had reason to know that there was a high degree of probability that the defendant's conduct would result in injury." *Peters v. General Motors Corp.*, 200 S.W.3d 1, 25 (Mo.App. W.D. 2006); *See Kaplan*, 166 S.W.3d at 73 ("[T]here must be a judicial determination that the conduct was so egregious that it was 'tantamount to intentional wrongdoing' and such that injury is the 'natural and probable consequence' of the conduct."); *see also Bross v. Denny*, 791 S.W.2d 416, 422 (Mo.App. W.D.1990) (finding absence of evidence that attorney intentionally disregarded his client's interest highly probative of whether attorney consciously disregarded client's rights); *see also Arana v. Koerner*, 735 S.W.2d 729, 737 (Mo.App. W.D.1987) (finding punitive damages instruction submissible where evidence shows attorneys knew or had reason to know settlement of lawsuit without consent or knowledge of client was highly likely to injure client's interests), *overruled on other grounds by Klemme v. Best*, 941 S.W.2d 493 (Mo. banc 1997).

Here, Niece initially approached Purcell to discuss how she could assist Boliance and Holtz in managing their finances due to their deteriorating health. Boliance and Holtz, both in their nineties, were in advanced stages of physical and mental decline. At the time they each executed the powers of attorney prepared by Purcell, Boliance had suffered an injury to his hip and a stroke, leaving him severely debilitated and Holtz was residing in an Alzheimer's unit.

During their initial meeting, Purcell suggested Niece and he visit Boliance and Holtz to find out more information about their conditions and discuss obtaining their signatures on powers of attorney and medical directives that would designate Niece as their attorney-in-fact. Soon thereafter, Purcell met with Boliance and Holtz and obtained their signatures on powers of attorney documents.

Purcell and Niece were unaware of Boliance's and Holtz's estate plans when they met with them and obtained their signatures on the powers of attorney documents. Purcell did not consult with either Boliance or Holtz prior to drafting the powers of attorney or inquire whether they had already executed estate plans or powers of attorney prior to obtaining their signatures. Purcell did not review with them any of the specific powers granted to Niece, nor did he provide them with copies of these documents.

Thereafter, Niece, under the advice and counsel of Purcell and his staff, retitled Boliance's and Holtz's assets and property to add herself to the titles in joint capacity. On December 4, 2007, Niece completed the retitling by executing, pursuant to her powers of attorney, a deed to Boliance's and Holtz's real property from Boliance and Holtz to herself, Boliance, and Holtz as joint tenants. Later that day, Holtz passed away. Niece then informed Boliance she had retitled Boliance's and Holtz's real property to include herself on the title and Boliance responded, "Good, no court." Boliance died three days later.

Upon discovery of Boliance's and Holtz's estate plans, Niece informed Purcell of their existence. Purcell then contacted Estates' representatives by letter dated December 10, 2007. Estates responded in a letter dated December 21, 2007, demanding an accounting and the return of all assets.

Jury instruction 9 permitted an award of punitive damages to Estates if the jury found Purcell's conduct as submitted in jury instruction 8 "showed complete indifference to or conscious disregard for the rights or property of others." Patterned after MAI 21.02 and 11.06, jury instruction 8 instructs that the verdict must be for Estates if the jury finds Purcell was negligent when he:

■ caused the transfer of all of the assets of [Holtz] and [Boliance] to [Niece] in her own name, without regard to their estate plans, or

■ failed to advise [Niece] to cooperate with the personal representative of the Estates ... and failed to advise or assist [Niece] to return the assets [to Estates],

. . . .

And as a direct result of Purcell's negligence Estates were damaged.

Here, Purcell became aware of Boliance's and Holtz's estate plans *after* advising Niece to retitle Boliance's and Holtz's assets and property. Absent evidence Purcell knew of Boliance's and Holtz's prior estate plans when he instructed Niece to retitle their assets, there was insufficient evidence that Purcell should have reasonably known he was acting with reckless indifference to the rights or interests of Estates or that he caused Niece to act "without regard to their estate plans."

Additionally, the record at trial shows that upon receipt of Estates' representatives' initial demand for an accounting, attorney Michael George ("George"), on January 5, 2008, undertook representation of Niece in making her accounting and returning Estates' assets. Niece, Purcell, George, as well as Estates' probate attorneys all testified that George represented Niece during the period in which she prepared an accounting and ultimately returned Estates' assets. Testimony and letters submitted as exhibits show George,

who shared office space with Attorneys, was in direct contact with Estates' attorneys once he undertook representation of Niece and that Purcell did not participate or involve himself in Niece's representation before the probate court. The record further shows Purcell understood George was overseeing the matter and he advised Estates' attorneys of George's role when he received subsequent demands for an accounting. Furthermore, Purcell, George and Niece testified Niece always intended to provide an accounting and return Estates' assets and Estates' attorney conceded the accounting provided to him itemized "legitimate" expenses and that such assets were returned to Estates.

Although the record below clearly shows Purcell failed to advise or assist Niece in providing her accounting to Estates or returning Estates' assets, in light of Purcell's knowledge of George's representation of Niece on the matter and evidence showing Niece in fact provided a legitimate accounting and returned Estates' assets, the record below does not clearly or convincingly show Purcell knew, or should have known that a high degree of probability of injury to Estates arose from his failure to advise Niece to provide an accounting and return Estates' assets.

Thus, absent evidence showing Purcell knew of Boliance and Holtz's estate plans prior to Niece retitling their assets, Estates did not meet their burden of proving Purcell knew or should have known his actions and omissions created a high degree of probability of injury to Estates' rights or interests when he caused Niece to retitle their assets. Nor does the record clearly and convincingly prove Purcell's reckless indifference or conscious disregard of Estates' rights by failing to advise Niece to cooperate with the personal representatives of Estates and return such assets when he knew Niece was rep-

resented by counsel. Accordingly, the trial court erred in submitting the case to the jury on the issue of punitive damages. Point granted.

In their second point, Attorneys allege instructional error regarding the punitive damages instruction submitted to the jury. Because the evidence was insufficient to support a submission of punitive damages and the trial court erred in submitting punitive damages to the jury, Attorneys' second point is moot. Point denied.

█ In their third point, Attorneys contend the trial court erred in submitting Estates' legal malpractice claim to the jury. Specifically, Attorneys argue Estates failed to adduce substantial evidence of every required element of their negligence claim because no expert testimony was presented establishing Attorneys' actions were the proximate cause of the attorney fee's claimed as damages. We disagree.

In determining whether a plaintiff made a submissible case, we consider the evidence in the light most favorable to the plaintiff, giving the plaintiff all reasonable beneficial inferences. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 443 (Mo. banc 1998). We presume the plaintiff's evidence is true and disregard any of the defendant's evidence that does not support the plaintiff's case. *Erdman v. Condaire, Inc.*, 97 S.W.3d 85, 88 (Mo.App. E.D.2002). Only where there is a complete absence of probative facts to support the jury's conclusion will we decide a submissible case was not made and reverse the jury's verdict. *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000).

To make a submissible case, plaintiff must present substantial evidence for every fact essential to liability. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo. App. E.D.2000). Substantial evidence is

evidence that has probative force upon the issues, and from which the trier of fact can reasonably decide a case. *Eidson v. Reproductive Health Servs.*, 863 S.W.2d 621, 626 (Mo.App. E.D.1993). The questions of whether evidence is substantial and whether the inferences drawn therefrom are reasonable are questions of law. *Id.*

"In any negligence action, 'the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to commit that duty, and that plaintiff's injury was proximately caused by defendant's failure.'" *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998) (quoting *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990)). To prove damages and causation the plaintiff must show, "but for" the attorney's negligence the result of the underlying proceeding would have been different. *Steward v. Goetz*, 945 S.W.2d 520, 532 (Mo.App. E.D. 1997). A defendant's conduct is the proximate cause of a plaintiff's injury when the injury is the natural and probable consequence of the conduct. *Collins v. Mo. Bar Plan*, 157 S.W.3d 726, 732 (Mo.App. W.D. 2005).

Here, Attorneys claim only that Estates failed to provide expert testimony to prove Attorneys' actions were the proximate cause of the attorney fee damages. Attorneys do not contend insufficient evidence as to any other element of the negligence claim.

█ Expert testimony is required to prove proximate causation in legal malpractice claims, except in a "clear and palpable" case. *Steward*, 945 S.W.2d at 533. Estates adduced testimony that Attorneys were negligent through their expert, Deborah Schuster, an experienced estate planning and elder law attorney. Schuster testified it was Purcell's duty to ensure that Boliance and Holtz's goals and inter-

ests concerning their assets were met, not the goals and interests of anyone else. She discussed an attorney-in-fact's obligations to a principal, including the duty to preserve assets, the statutory prohibition on self-gifting, and Purcell's duty to inform Niece of her duties as attorney-in-fact.

Estates' expert testified Purcell was negligent in failing to safeguard Boliance's and Holtz's assets according to the laws of Missouri and the rules of ethics. Purcell was negligent for, among other things, failing to consult with Boliance and Holtz prior to drafting their respective powers of attorney, failing to make any reasonable inquiries when meeting with them, and for instructing Niece to retitle Boliance's and Holtz's assets and property to include herself in joint capacity. Schuster testified Purcell should have consulted with Boliance and Holtz to ascertain their wishes prior to drafting the powers of attorney, and should have made reasonable inquiries into their prior estate plans and their respective capacities to execute powers of attorney. She further testified the accounts Niece set up should have been titled in a manner consistent with section 404.712 RSMo 2000, to clearly indicate they were being held by Niece as attorney-in-fact. She testified that section 404.714 RSMo Cum.Supp.2007, provides the attorney-in-fact must avoid self-dealing and cannot make transfers altering the principal's established estate plan. Niece's actions, she said, resulted in self-dealing in violation of her fiduciary duties. She further testified that Purcell's negligent actions resulted in Niece self-gifting more than $850,000 of Estates' assets to herself, thereby undermining the interests and wishes of Boliance and Holtz as expressed through their estate plans.[2]

Schuster also testified Purcell was negligent for failing to advise or assist Niece in providing an accounting or turning over Estates' assets after discovering Boliance's and Holtz's estate plans. She stated that Purcell, the attorney for Boliance, Holtz, and Niece, had an unconditional duty to advise and assist Niece to "promptly deliver property to the personal representative and trustee and to provide copies of all transactions," upon the death of Boliance and Holtz.[3] Niece testified and Purcell concedes he became aware of Boliance and Holtz's estate plans in early December 2007, and although George began representing Niece approximately one month later, during the interim period Purcell continued to advise Niece,[4] yet the record is devoid of evidence showing he ever advised Niece to provide an accounting or return such assets to Estates.

Although Schuster did not expressly state Purcell's negligence caused Estates to incur attorneys fees, her testimony carried sufficient probative force to allow a jury to reasonably infer causation:

> the court, if any ... and shall communicate with and be accountable to the principal's personal representative ... and the attorney in fact shall promptly deliver to and put in the possession and control of the principal's personal representative or successors any property of the principal...."

---

**2.** *See* § 362.470 RSMo 2000; *In re Patterson's Estate,* 348 S.W.2d 6, 10 (Mo.1961) (finding the opening of a joint account generally results in a gift on part of joint depositor who contributed money); *In re Gerling's Estate,* 303 S.W.2d 915, 917 (Mo.1957) (restating the general rule that upon the death of any one joint tenant, surviving tenants own the entire undivided estate together, and so on to the last surviving tenant, who becomes sole owner.).

**3.** Pursuant to section 404.714.9, in relevant part, "[o]n the death of the principal, the attorney in fact shall follow the instructions of

**4.** Niece testified Purcell continued to advise her into March 2008 concerning the creation of her own trust, and she had a discussion with either Purcell or his partner concerning continued management of Estates' assets.

Q. Was there ever any accounting or an explanation of all bank accounts?

A. No.

Q. We just have what we have, right?

A. Correct. There—if I may.

Q. Yes.

A. There was a letter from Dave Purcell to [Estates' personal representatives] indicating that wills and trusts were found, but that Susan Zehnle had been acting as power of attorney, and that she was willing to do that and that, in fact, she would provide an accounting and distribute the assets in accordance with their documents. And—

Q. Was that ever done—

A. Never.

Q. —outside of the lawsuit and the Court's order?

A. No.

Q. Based on the action and the misactions of Mr. Purcell and his law firm, were Steve and Anna's estates harmed?

R. Absolutely.

Q. Were their trusts harmed?

A. Yes.

Moreover, there was evidence adduced at trial to show expenditure of Estates' attorneys' fees was the reasonable, natural, and probable consequence of Purcell's negligence. In addition to expert testimony, Niece and Estates' attorneys who brought suit against Niece in probate court testified that Purcell did not cooperate or assist in Estates' efforts to recover Boliance and Holtz's assets, despite Estates' repeated demands for an accounting over the course of several months. Niece testified that after the lawsuit was filed against her in probate court, Purcell refused her request for her client file and she was never informed of Estates' demands for the return of assets prior to May 2008. Harvey Avellone, Estates' initial attorney, testified without objection he believed he was being "stonewalled" by Purcell and he believed litigation was necessary to resolve the issue stating, "[y]eah, absolutely. I mean, that's what you have to do." Attorney David Butsch, Estates' litigation attorney retained in the prior probate action, testified, without objection, "I needed a court order to freeze the accounts right away before the money was gone." Additionally, upon successful recovery of Estates' assets, Estates paid Avellone and Butsch their attorneys' fees. *See Eagle v. Redmond Bldg. Corp.*, 946 S.W.2d 291, 293 (Mo.App. W.D.1997) (recognizing that evidence a party has paid a particular amount of attorney's fees constitutes prima facie evidence of the reasonableness of those fees). "Where the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages." *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 556 (Mo.App. E.D. 1985) (quoting *Johnson v. Mercantile Trust Co. Nat'l Assoc.*, 510 S.W.2d 33, 40 (Mo.1974)). Relying on this evidence, the jury could have reasonably found Purcell's negligence caused Estates to incur, in good faith, reasonable attorneys' fees in collateral litigation. Thus, Estates provided substantial evidence of every required element of their negligence claim. Accordingly, we find the trial court did not err in submitting Estates' legal malpractice claim to the jury. Point denied.

■ In their fourth point, Attorneys contend the trial court erred in excluding competent and material evidence offered by Attorneys challenging the reasonableness and necessity of attorneys' fees ultimately assessed as compensatory damages because the error materially affected the merits of the action in that the jury was denied the opportunity to review and con-

sider evidence showing the fees sought by Estates were unreasonable and unnecessary. We disagree.

We review a decision to admit or exclude evidence for an abuse of discretion. *State v. Smoot,* 363 S.W.3d 108, 110 (Mo.App. E.D.2011). An abuse of discretion occurs when the court's decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Kroeger–Eberhart v. Eberhart,* 254 S.W.3d 38, 42 (Mo.App. E.D.2007).

Attorneys' fees comprise the only compensatory damages in this case. In the probate litigation prior to the filing of this case, Estates paid $256,896 in attorneys' fees for discovery and collection of assets from Niece in probate court, the majority of which was paid pursuant to a one-third contingency fee agreement. Before trial in this case, Estates filed a motion in limine to prohibit evidence that the attorneys' fees from the prior probate action against Niece were improper or excessive. The court, denying in part, ruled it could not "unconditionally grant the [motion in limine] and thereby wholly preclude any and all possible presentation of testimony or argument by [Attorneys] concerning the necessity and/or reasonableness of the attorney fees paid." However the court prohibited Attorneys from presenting evidence: (1) suggesting the fees were unnecessary or unreasonable because another attorney could have pursued the action more cheaply, (2) comparing the contingency fee Estates paid for probate litigation to the statutory schedule in probate or other matters, or (3) mentioning what the estate administrator earned.

The trial court's decision on this evidentiary issue was consistent with Missouri law. In Missouri it is not for the jury to determine the reasonableness of attorneys' fees. "Once liability for attorney's fees is established, the reasonableness of the fees should be determined by a judge, not a jury." *Klinkerfuss v. Cronin,* 289 S.W.3d 607, 614 (Mo.App. E.D.2009). Furthermore, Missouri courts have long held that a contingency fee agreement between an attorney and client awarding one-third of the money collected to the attorney is reasonable and customary. *See e.g. Orr v. Mutual Ben. Health & Acc. Ass'n,* 240 Mo.App. 236, 207 S.W.2d 511, 512 (1947); *State ex rel. Anderson v. Roehrig,* 320 Mo. 870, 8 S.W.2d 998, 999 (1928). The trial court's decision, therefore, was not against the logic of the circumstances, nor was it so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Accordingly, we find the trial court did not abuse its discretion in excluding Attorneys' evidence challenging the reasonableness and necessity of attorneys' fees. Point denied.

In their fifth point, Attorneys contend the trial court erred in permitting, over Attorneys' objection, testimony by Niece of alleged statements of Attorneys suggesting assets of the Estates be deposited in trust accounts held by Niece and her husband because the error materially affected the merits of the action in that the subject testimony was irrelevant to any of the claims submitted to the jury and unfairly prejudicial to the Attorneys. We disagree.

Attorneys filed six motions in limine asking the court to bar the introduction of various evidence unrelated to the specific acts of negligence alleged by Estates in this case, including the prohibition of any evidence suggesting Attorneys conspired with Niece to transfer money into Niece's trust in March 2008. Attorneys, however, failed to preserve these objections at trial when Niece's deposition testimony was introduced into evidence. "A motion in limine, by itself, preserves nothing for appeal." *Hancock v. Shook,* 100 S.W.3d 786,

802 (Mo. banc 2003). "We will not convict the trial court of reversible error based on the admission of evidence, or the allowance of arguments, to which no objections were made." *Gamble v. Browning*, 379 S.W.3d 194, 204–205 (Mo.App. W.D.2012). Point denied.

In their final point, Attorneys contend the trial court erred in entering judgment in favor of Estates and denying Attorneys' motion for new trial because the jury verdict was against the manifest weight of the evidence in that Estates failed to adduce substantial evidence at trial of each element of their legal malpractice claim. We disagree.

We review the denial of a motion for new trial under Rule 78.01 for abuse of discretion. *Tisch v. DST Systems*, 368 S.W.3d 245, 255–256 (Mo.App. W.D.2012). "The trial court's denial of a motion for new trial challenging the verdict in a jury tried case as against the weight of the evidence is a conclusive determination that cannot be overturned on appeal." *In re Nelson*, 375 S.W.3d 885, 892 (Mo.App. S.D. 2012) (quoting *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 699, 705 (Mo.App. S.D. 2008)). "If a trial court refuses to grant a new trial on the ground that the verdict is against the weight of the evidence, appellate courts will not pass on the weight of the evidence." *Veach v. Chicago and North Western Transp. Co.*, 719 S.W.2d 767, 769 (Mo. banc 1986). Point denied.

## CONCLUSION

The judgment of the trial court is reversed as to the award of punitive damages and affirmed in all other respects.

·KATHIANNE KNAUP CRANE, P.J. and MARY K. HOFF, J., concur.