

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: S.F.M.D., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| JUVENILE OFFICER, | ) | WD77071 (Consolidated with WD77104) |
| | ) | |
| Respondent, | ) | Opinion filed: October 14, 2014 |
| | ) | |
| v. | ) | |
| | ) | |
| F.D. (Father), | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| R.R. (Mother), | ) | |
| | ) | |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### The Honorable Justine E. Del Muro, Judge

Before Division Three: Gary D. Witt, Presiding, Judge,
Joseph M. Ellis, Judge and Thomas H. Newton, Judge

Father and Mother appeal from a judgment entered by the Circuit Court of Jackson County assuming jurisdiction over their minor child, S.F.M.D., concluding that S.F.M.D. was in need of care and treatment, and taking custody of S.F.M.D. For the following reasons, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

When S.F.M.D. was almost three months old, on August 29, 2013, in response to a domestic disturbance call, police officers arrived at the Kansas City, Missouri apartment where Father, Mother, and S.F.M.D. resided. Father was placed under arrest.

After noticing a burn on S.F.M.D.'s leg, the police asked that S.F.M.D. be taken to Children's Mercy Hospital for evaluation. At the hospital, the burn was examined, Mother was questioned by a hospital social worker, and a skeletal survey was performed on S.F.M.D. The skeletal survey did not reveal any abnormalities. Mother told the social worker that S.F.M.D. had gotten burned on August 25 when the family dog bumped into her ironing board and her iron had fallen and contacted S.F.M.D.'s leg. Mother reported that she and Father, who arrived shortly after the accident, had treated the burn with olive oil, Neosporin, and gauze. Mother revealed to the social worker that there was a lengthy history of domestic violence between Mother and Father and that such incidents had intensified after S.F.M.D. got burned. After S.F.M.D. was treated and Mother was interviewed, Mother was placed under arrest for child endangerment, and S.F.M.D. was placed in police protective custody.

On August 30, 2013, the Juvenile Officer filed a Petition alleging that S.F.M.D. was without proper care, custody, and support because Mother neglects his medical needs, specifically referencing Mother's failure to seek medical treatment for the burn on S.F.M.D.'s leg. Later that day, the Family Court issued an Order for Temporary Protective Custody Pursuant to Rule 123.04, placing S.F.M.D. in the custody of the Children's Division. An investigator with the Children's Division was assigned to

2

investigate the circumstances surrounding the S.F.M.D.'s burnt leg and allegations of domestic violence between Mother and Father.

After being released on bail, on September 2, 2013, Mother met with a caseworker at Truman Medical Center. Mother executed a Petition for Order of Protection against Father that was filed later that day. In her petition, Mother asserted that, on August 28, Father, agitated that she had allowed the baby to get burned, had beaten her in the head with brass knuckles. She claimed that the following day Father had hit and punched her while she was holding S.F.M.D. in her arms and that he would not let her leave the apartment. She stated that Father had repeatedly hit her in the preceding week and that she was afraid that he would harm her when he was released from jail. After completing her Petition, Mother was escorted by the police to a shelter for battered women.

On September 3, 2013, Mother told the investigator from the Children's Division that incidents of domestic violence between her and Father had been going on for three months. She told the investigator that she had filed an *ex parte* order for protection and was staying at a domestic violence shelter. After staying at the domestic violence shelter for a week, Mother returned to live with Father.

On September 18, 2013, S.F.M.D. was taken back to Children's Mercy Hospital for re-examination and was given another skeletal survey. The skeletal survey showed healing fractures on four of the ribs on the child's right side.

On September 30, 2013, Mother's Petition for Order of Protection was dismissed when neither Mother nor Father appeared for a hearing. That same day, the Juvenile Officer filed his First Amended Petition. In the first count, he alleged that Mother had

3

neglected the child based upon S.F.M.D. having sustained a leg burn and some broken ribs. In the second count, the Juvenile Officer alleged that Father had abused or neglected S.F.M.D. based upon the leg burn, the broken ribs, a general history of violent and criminal acts, and the two instances of domestic violence specifically described by Mother in her Petition for Order of Protection.

The Juvenile Officer's petition was heard by the Family Court on October 28 and November 19, 2013. At the start of the hearing, the Juvenile Officer amended the pleadings to exclude any allegations related to the burn on S.F.M.D.'s leg.[1] As so amended, in Count I, the juvenile officer alleged:

> 1. The minor child is without proper care, custody and support necessary for his well-being and is subject to this Court's jurisdiction pursuant to Section 211.031.1 RSMo. in that his mother neglects him.
>
> 2. The child suffered several rib fractures while in his mother's care, as diagnosed by Children's Mercy Hospital staff on September 18, 2013. Mother is unable to provide an explanation of when and how the rib fractures occurred.
>
> 3. Mother's actions place the child at risk of further neglect absent this Court's intervention.

Count II averred:

> 1. The minor child is without proper care, custody and support necessary for his wellbeing and is subject to this Court's jurisdiction pursuant to Section 211.031.1 RSMo. in that his father abuses and neglects him.
>
> 2. On or about August 28, father hit mother in the head while wearing brass knuckles. On or about August 29, 2013, father hit and punched mother while she was holding the child. Additionally, the child suffered several rib fractures while in his father's care, as diagnosed by Children's Mercy Hospital staff on September 18, 2013.

---

[1] The opinion of the healthcare providers treating S.F.M.D. appears to have been that the parents provided proper care for the burn under the circumstances and that treatment by a doctor had not been required for that injury.

4

3. Father has a history of violence and criminal action that impairs his parenting ability. In Case Number 16CR99001774-01, father [under a different name] pleaded guilty to Felony Distribution of a Controlled Substance near Schools.[2]

4. Father's actions place the child at risk of further harm and neglect absent this Court's intervention.

After hearing the evidence, the Family Court entered its Order Upon Adjudication Hearing finding:

The allegations are denied by the mother and father.

Evidence adduced sustains the allegations as to counts 1 and 2, as amended in open Court.

Testimony having been heard and other evidence received by the Court, the Court finds the evidence adduced sustains the allegations. Therefore the Petition is sustained. The Court having found it had jurisdiction over said juvenile and the Court having received evidence concerning the need of said juvenile for care and treatment, and it being found that said juvenile is in need of care and treatment.

The Court finds the mother's testimony generally incredible.

The Court finds an extremely high likelihood of the rib fractures occurring while the child was in the parents' custody.

Subsequently, the court issued its "Findings and Recommendations" which ordered that S.F.M.D. be committed to the custody of the Children's Division for placement in licensed placement. In addition, the court ordered individual counseling for Mother and Father on domestic violence issues, supervised visits and unsupervised visits as allowed by the Children's Division, provision of a parent aid to assist the family with parenting skills, psychiatric evaluation of Mother and Father, and random urinalysis for

---

[2] Father pleaded guilty to that charge in 1999.

5

Mother and Father. Father brings eight points on appeal from the Family Court's judgment, Mother brings six.[3]

On appeal, Mother and Father contend that the Family Court erred in finding that clear and convincing evidence established that S.F.M.D. was in need of care and subject to the court's jurisdiction based upon Mother and Father's neglect. Section 211.031.1 confers exclusive original jurisdiction to family and juvenile courts in proceedings involving any child who is alleged to be in need of care because his or her parent or parents neglect or refuse to provide support or other care necessary for the child's wellbeing. "To assert jurisdiction under section 211.031.1(1), the juvenile court must find clear and convincing evidence that the child is in need of care because the parent has neglected to provide the care necessary for the child's well-being." *In re A.R.*, 330 S.W.3d 858, 862 (Mo. App. W.D. 2011) (internal quotation omitted). "Evidence is clear, cogent and convincing when it instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re N.J.B.*, 327 S.W.3d 533, 537 (Mo. App. S.D. 2010) (internal quotation omitted). "When a court finds that a child falls within the parameters of § 211.031.1(1), 'the court shall so decree and make a finding of fact upon which it exercises jurisdiction over the child.'" *In re T.B.L.T.*, 367 S.W.3d 663, 665 (Mo. App. E.D. 2012) (quoting *§ 211.181.1*) (emphasis omitted). "'The determination to remove the child from the parent must be preceded by a finding that removal of the child was necessary to protect the child and a detail of the evidence on

---

[3] "[A] finding of jurisdiction and judgment of disposition pursuant to the provisions of sections 211.031 and 211.183 is appealable." *In re G.G.B.*, 394 S.W.3d 457, 463 (Mo. App. E.D. 2013).

which that ultimate finding rest[s].'" *In re G.F.M.*, 169 S.W.3d 109, 112 (Mo. App. W.D. 2005) (quoting *In re A.L.W.*, 773 S.W.2d 129, 133, 135 (Mo. App. W.D. 1989)).

In this case, the only specific factual finding made by the Family Court was that there was "an extremely high likelihood" S.F.M.D. suffered broken ribs at some point while in the care of Father and Mother. Such a finding is not sufficient, in and of itself, to establish that Father and/or Mother abused or neglected the child. Children frequently suffer injuries that are not the result of abuse or neglect. There were no findings in the judgment, or allegations in the Juvenile Officer's petition, that either parent caused the rib injury; was aware of the injury; could have done anything to prevent the injury; should have sought medical treatment for the injury; or needed to, but failed to, take steps to avoid a similar injury in the future. Indeed, aside from pleading that S.F.M.D. suffered broken ribs while in the care of Father and Mother, the Juvenile Officer merely averred that Mother was "unable to provide an explanation of when and how the rib fractures occurred." Without more, a parent's lack of knowledge of when and how an injury occurred is not sufficient to establish that they abused or neglected their child. In short, the Family Court's finding related to S.F.M.D.'s injured ribs does not, by itself, support a finding of abuse or neglect on the part of either Father or Mother.

In its judgment the trial court did find that the allegations in the petition had been proven; however, even if we were to view the averments found to have been proven as factual findings adopted by the trial court, those averments are almost entirely conclusory and assert very few specific facts. In addition to the previously discussed allegations related to S.F.M.D. sustaining a rib injury, the petition alleged that, on

7

August 28, Father hit Mother with brass knuckles and, the following day, Father punched Mother while she was holding S.F.M.D. The petition further generally asserted that Father had a history of violence and criminal action that impairs his parenting ability and specifically referenced a 1999 conviction for the sale of marijuana within 2,000 feet of a school.

For the instance with the brass knuckles or Father's "history of violence and criminal action" to constitute neglect or abuse, more specific findings would be required, as the averments found to be proven establish no connection between those acts and the welfare of S.F.M.D. The fact that Father struck Mother with brass knuckles the day before the child was placed in protective custody, while a heinous crime, does not establish that this harmed or posed any potential harm to S.F.M.D. There was no allegation or finding that S.F.M.D. was present when that attack occurred or was otherwise effected by the incident. Similarly, a generic finding that Father has a history of violence and criminal activity at some point in his past is insufficient to establish that neglect or abuse on the part of Father, absent findings establishing the specific types of violent acts or crimes were committed by Father, when and against whom such acts were committed, that similar behaviors were likely to occur in the future, and that such acts and/or Father's diminished parenting ability resulting therefrom posed a risk of harm to S.F.M.D. The only specific criminal activity referenced in the petition, aside from the two instances of domestic violence against Mother, was Father's 1999 conviction for selling marijuana within 2,000 feet of a school. A finding as to one instance of selling marijuana 15 years ago does not support a finding of abuse or neglect on the part of Father.

8

The fact that Father punched Mother while she was holding S.F.M.D. might well be sufficient to support a finding of neglect or abuse on the part of Father but, from the judgment rendered, we cannot know if the trial court did or would have found abuse or neglect based on that fact alone. Furthermore, none of the Family Court's findings as to Count II establish neglect on the part of Mother. The fact that Mother was a victim of domestic violence on two occasions in the two days immediately before the child was placed in protective custody does not establish that she was neglectful in her parenting of S.F.M.D. Likewise, the fact that the father of her child has a history of violent and/or criminal acts at some point in his past does not establish that Mother was neglectful.

Certainly, evidence was presented that might support additional findings that could support an ultimate finding of neglect on the part of Mother, especially if she is found to be insistent on continuing to live with and expose S.F.M.D. to an abusive or violence prone Father. The evidence could also support additional findings bolstering the ultimate finding of abuse and neglect on the part of Father beyond the singular instance of striking Mother while she held the child. Because the Family Court failed to satisfy its statutory obligation under § 211.181 to enter specific factual findings supportive of its finding that S.F.M.D. was in need of care and treatment, this Court cannot know what specific facts were found to exist and cannot meaningfully review the Family Court's judgment. *See **In re T.B.L.T.***, 367 S.W.3d 663, 665 (Mo. App. E.D. 2012) ("Here, the family court's judgment provided lip-service to the statutes, but merely offered the conclusory statement that Mother 'failed [to] provide the proper care, custody and support as alleged in the petition.' Given the evidence adduced at the hearing regarding Mother's alleged involvement with methamphetamine and the child's

9

exposure to such an environment, it is inexcusable that the family court did not make any findings of fact to support the exercise of jurisdiction."); *In re E.K.*, 154 S.W.3d 453, 455 (Mo. App. S.D. 2005) (holding that the conclusory nature of the juvenile court's findings and a lack of specific factual findings precluded any meaningful appellate review of the court's decision).

"The failure to make the mandatory statutory findings requires this court to remand the case so that the juvenile court may enter a judgment complying with the dictates of the law." *In re E.K.*, 154 S.W.3d at 455. Accordingly, the trial court's decision is reversed, and the cause is remanded for entry of a judgment complying with the fact finding requirement of § 211.181. Prior to entering such judgment, the Family Court is free, in its discretion, to reopen the case and to consider additional evidence, including evidence related to events that have occurred since the entry of the order of disposition. *Id*.; *Interest of K.L.B.*, 898 S.W.2d 696, 702 (Mo. App. S.D. 1995).

Because they could affect matters on remand, we will address a couple of evidentiary issues raised by Appellants on appeal. In his first point, Father contends that the Family Court erred in admitting into evidence testimony from pediatric nurse practitioner Amy Terreros regarding the existence of the rib fractures, the potential age of those fractures, and the possible causes of such fractures. Father argues that Terreros was not sufficiently qualified to provide such expert testimony, that her opinions were not based on sufficient evidence or reliable data, and were offered in terms of possibility. Mother makes similar claims in her second point.

Section 490.065 governs the admissibility of expert testimony in civil cases. *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 761 (Mo. banc 2010). It "sets out

10

the legal basis for admitting expert testimony" and provides that "[i]f the trial court finds that the expert is qualified 'by knowledge, skill, experience, training, or education,' that the expert's testimony will assist the trier of fact, and that the facts or data the expert uses are reasonably relied upon by experts in the field and otherwise reasonably reliable, the trial court must admit his or her testimony, and if not, it must be excluded." *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011). "In deciding whether to admit an expert's testimony, the circuit court is required to ensure that all of the statutory factors are met; however, the court is not required to consider the degree to which they are met." *Id*. "So long as the expert is qualified, any weakness in the expert's knowledge is for the [finder of fact] to consider in determining the weight to give the expert." *Id*. "Appellate courts generally say they review a circuit court's evidentiary rulings for abuse of discretion." *Id*.

The record reflects that Terreros has bachelor's and master's degrees in nursing and a doctorate degree in nursing practice. She has seven years experience in the division of child abuse and neglect at Children's Mercy Hospital in Kansas City, Missouri where her duties have included the evaluation, assessment, diagnosis, and treatment of child abuse and neglect injuries. She testified that she has seven years experience reading radiology reports and that she has completed numerous continuing professional education courses. The Family Court certainly did not abuse its discretion in finding that Terreros qualifies as a medical expert based upon her knowledge, education, training, and experience.

Appellants specifically complain that Terreros was not qualified to diagnose rib fractures in an infant from x-rays and that such a diagnosis could only be made by a

11

medical doctor or radiologist. While Terreros did testify that she was capable of diagnosing such fractures from x-ray images and could see the healing fractures on S.F.M.D.'s x-ray films, her testimony reflected that she had relied upon the diagnosis made by Dr. Christopher Keup in his skeletal survey report as to the existence the healing rib fractures. Dr. Keup's report was admitted into evidence and is not challenged by Appellants on appeal. Moreover, no testimony or evidence was admitted at trial that could be viewed as challenging Dr. Keup's diagnosis regarding the existence of healing rib fractures on September 18. Thus, even assuming, *arguendo*, that Terreros should not have been allowed to testify as to her own interpretation of the x-ray films, the testimony was cumulative to the skeletal survey report, and its admission would have to be viewed as harmless.

Appellants' real complaints relate to Terreros's testimony regarding how long it takes for rib fractures to show up in x-rays and the possible causes of S.F.M.D.'s rib fractures. While Appellants contend that Terreros improperly opined on the age of the rib fractures, her testimony in this area was actually limited to stating that, based upon her education and review of scientific literature on the subject, it takes seven to ten days before callous formation, like that appearing in S.F.M.D.'s September 18 x-ray and upon which Dr. Keup's diagnosis of healing rib fractures was based, becomes visible in x-ray films. She stated that S.F.M.D.'s rib fractures, therefore, occurred at least seven to ten days prior to September 18 and could have occurred prior to August 30, despite not appearing in the x-rays taken that day.[4] The trial court properly determined that

---

[4] This is not the same thing as opining as to the age of the fractures based upon an interpretation of the x-ray films as Appellants attempt to characterize the testimony.

12

Terreros was qualified to offer such testimony based upon her education, experience, and review of scientific literature.

As to the possible causes of S.F.M.D.'s rib fractures, Terreros testified regarding the multiple known potential causes for rib fractures in an infant and which of those potential causes she had ruled out based upon S.F.M.D.'s medical history, the tests that had been performed, and her examination of him. Such matters appear well within the purview of a nurse practitioner specializing in the treatment of potentially abused children. The trial court did not err in allowing such testimony based upon Terrerros's knowledge, skill, experience, training, and education. Point denied.

In his fourth point, Father contends that the Family Court abused its discretion in admitting into evidence Mother's Petition for Order of Protection against Father. He argues that the petition was hearsay and that no evidence was offered to establish that an exception to the hearsay rule applied. Mother makes similar arguments in her first point, claiming that the evidence was improperly admitted as substantive evidence against her.

"We review a decision to admit or exclude evidence for an abuse of discretion." *Meyer v. Purcell*, 405 S.W.3d 572, 581 (Mo. App. E.D. 2013). "An abuse of discretion occurs when the court's decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

The first thing that the Juvenile Officer did at trial was to offer into evidence Mother's Petition for Order of Protection. Both Father and Mother objected on hearsay grounds. The Family Court commissioner then stated, "Well, it's a certified legal

13

document. I don't think that – obviously it's relevant and it's not hearsay, because they're both parties. . . . [S]he can testify and say it isn't her statement, but I still have to receive a certified document. So it's received."

Section 490.130 provides that "[c]opies form the record of proceedings of any court of this state, attested by the clerk thereof . . . shall be received *as evidence of the acts or proceedings of such court* in any court of this state." Thus, while the petition might well have been properly admitted on this basis, the statute only provides for its admission as evidence of the fact that the petition was filed and not as evidence of the truth of the matters asserted within that petition. Accordingly, even if the document was properly admitted under the statute for this limited purpose, the parties' hearsay objections could not be disregarded on that basis as they were challenging its admission as proof of the matters asserted in the petition.

We, therefore, consider whether an exception to the hearsay rule is applicable. The sole exception noted by the commissioner and advanced by the Juvenile Officer applies to admissions that have been made by a party. "A statement can be admitted as an admission of a party opponent if it is material to the issues of the case, is relevant to the case, and is offered by the opposing party." *State v. Eisele*, 414 S.W.3d 507, 514 (Mo. App. E.D. 2013). Mother's petition certainly meets those criteria. However, "[w]hile admissions of a party opponent are exceptions to the hearsay rule, it is well established under Missouri law that admissions of a co-defendant are not admissible against another co-defendant merely because of one's being a co-party to litigation." *Viacom Outdoor, Inc. v. Taouil*, 254 S.W.3d 234, 237 (Mo. App. E.D. 2008) (internal quotation omitted). Accordingly, the petition was properly admitted as substantive

14

evidence against Mother, who, by signing the petition, is deemed to have admitted the averments contained therein; but, as to Father, the petition cannot be considered as substantive evidence of the truth of the matters asserted therein. That said, the averments in the petition could most certainly be utilized to impeach testimony by Mother, to the extent her testimony is contrary thereto, and used against Father in that manner.

For the foregoing reasons, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

_____
Joseph M. Ellis, Judge

All concur.