

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF: S.F.M.D.,
PLAINTIFF; JUVENILE OFFICER,

   Respondent,

v.

F.D., (FATHER), and R.R. (MOTHER),

   Appellants.

WD78265 WITH
WD78279, WD78333 and
WD78418

OPINION FILED:

DECEMBER 22, 2015

---

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable John M. Torrence, Judge**

**Before Division One: Anthony Rex Gabbert, P.J., Victor C. Howard, and Cynthia Martin,**

**JJ.**

F.D. (Father) and R.R. (Mother) appeal the circuit court's judgment assuming jurisdiction over their minor child, S.F.M.D., concluding that S.F.M.D. was in need of care and treatment, and placing custody of S.F.M.D with the Children's Division. As set forth below, Father asserts eleven points on appeal and Mother asserts six. We affirm.

**Factual and Procedural History[1]**

On August 29, 2013, when S.F.M.D. was almost four months old, police officers arrived at the Kansas City apartment where Father, Mother, and S.F.M.D. resided in response to a domestic disturbance call. Father was placed under arrest.

After noticing a burn on S.F.M.D.'s leg, the police asked that S.F.M.D. be taken to Children's Mercy Hospital for evaluation. At the hospital, the burn was examined, Mother was questioned by a hospital social worker, and a skeletal survey was performed on S.F.M.D. The skeletal survey revealed no abnormalities. Mother told the social worker that S.F.M.D. received the burn on August 25 when the family dog bumped into Mother's ironing board and her iron fell on S.F.M.D.'s leg. Mother reported that she and Father, who arrived shortly after the accident, had treated the burn with olive oil, Neosporin, and gauze. Mother revealed to the social worker that there was a lengthy history of domestic violence between Mother and Father and that such incidents had intensified after S.F.M.D. got burned. After S.F.M.D. was treated and Mother was interviewed, Mother was placed under arrest for child endangerment, and S.F.M.D. was placed in police protective custody.

On August 30, 2013, the Juvenile Officer filed a Petition alleging that S.F.M.D. was without proper care, custody, and support because Mother neglects his medical needs, specifically referencing Mother's failure to seek medical treatment for the burn on S.F.M.D.'s leg. Later that day, the Family Court issued an Order for Temporary Protective Custody Pursuant to Rule 123.04, placing S.F.M.D. in the custody of the Children's Division. An investigator with

---

[1]In setting forth the Factual and Procedural History we borrow extensively from *In re S.F.M.D.*, 447 S.W.3d 758 (Mo. App. 2014).

the Children's Division was assigned to investigate the circumstances surrounding S.F.M.D.'s burnt leg and allegations of domestic violence between Mother and Father.

On September 2, 2013, Mother met with a caseworker at Truman Medical Center after being released on bail. Mother executed a Petition for Order of Protection against Father that was filed later that day. In her petition, Mother asserted that, on August 28, Father, agitated that Mother had allowed the baby to get burned, had beaten Mother in the head with brass knuckles. She alleged that the following day, Father hit and punched her while she was holding S.F.M.D. in her arms and that Father would not let her leave the apartment. She stated that Father had repeatedly hit her in the preceding week and that she was afraid that he would harm her when he was released from jail. After completing her Petition, Mother was escorted by the police to a shelter for battered women.

On September 3, 2013, Mother told the investigator from the Children's Division that incidents of domestic violence between her and Father had been going on for three months. She told the investigator that she had filed an ex parte order for protection and was staying at a domestic violence shelter. After staying at the domestic violence shelter for one week, Mother returned to live with Father.

On September 18, 2013, S.F.M.D. was taken back to Children's Mercy Hospital for re-examination and was given another skeletal survey. The skeletal survey showed healing fractures on four of the ribs on the child's right side.

On September 30, 2013, Mother's Petition for Order of Protection was dismissed when neither Mother nor Father appeared for the hearing. That same day, the Juvenile Officer filed a First Amended Petition. In the first count, the Juvenile Officer alleged that Mother had neglected the child based upon S.F.M.D. having sustained a leg burn and broken ribs. In the second count,

3

the Juvenile Officer alleged that Father had abused or neglected S.F.M.D. based upon the leg burn, the broken ribs, a general history of violent and criminal acts, and the two instances of domestic violence specifically described by Mother in her Petition for Order of Protection.

The Juvenile Officer's petition was heard by the Family Court on October 28 and November 19, 2013. At the start of the hearing, the Juvenile Officer amended the pleadings to exclude any allegations related to the burn on S.F.M.D.'s leg. As so amended, in Count I, the Juvenile Officer alleged:

1. The minor child is without proper care, custody and support necessary for his well-being and is subject to this Court's jurisdiction pursuant to Section 211.031.1 RSMo. in that his mother neglects him.

2. The child suffered several rib fractures while in his mother's care, as diagnosed by Children's Mercy Hospital staff on September 18, 2013. Mother is unable to provide an explanation of when and how the rib fractures occurred.

3. Mother's actions place the child at risk of further neglect absent this Court's intervention.

Count II averred:

1. The minor child is without proper care, custody and support necessary for his wellbeing and is subject to this Court's jurisdiction pursuant to Section 211.031.1 RSMo. in that his father abuses and neglects him.

2. On or about August 28, father hit mother in the head while wearing brass knuckles. On or about August 29, 2013, father hit and punched mother while she was holding the child. Additionally, the child suffered several rib fractures while in his father's care, as diagnosed by Children's Mercy Hospital staff on September 18, 2013.

3. Father has a history of violence and criminal action that impairs his parenting ability. In Case Number 16CR99001774-01, father [under another name] pleaded guilty to Felony Distribution of a Controlled Substance near Schools.

4. Father's actions place the child at risk of further harm and neglect absent this Court's intervention.

4

After hearing the evidence, the Family Court sustained the Juvenile Officer's allegations and placed the child in the custody of the Children's Division. Mother and Father appealed. On October 14, 2014, this court reversed the trial court's judgment and remanded for further proceedings finding that "[b]ecause the Family Court failed to satisfy its statutory obligation under § 211.181 to enter specific factual findings supportive of its finding that S.F.M.D. was in need of care and treatment, this Court cannot know what specific facts were found to exist and cannot meaningfully review the Family Court's judgment." *In re S.F.M.D.*, 447 S.W.3d 758, 765 (Mo. App. 2014). We remanded the matter "for entry of a judgment complying with the fact finding requirement of § 211.181," and noted that the court, prior to entering such judgment, was free to reopen the case and to consider additional evidence, including evidence related to events that had occurred since the entry of the order of disposition. *Id.*

On November 4, 2014, the Juvenile Officer moved to reopen evidence and a hearing was scheduled. The parties disagreed, however, as to what evidence should be allowed at that hearing. The Family Court overruled the Father's objection that evidence regarding a May 2014 domestic violence incident be allowed into evidence because it had not specifically been pled in the Juvenile Officer's petition. Father conceded, however, that evidence would be allowable if "you can do it in a way that supports your pending allegations." The court noted that it had already heard the evidence and had briefly mentioned it in a prior dispositional order, but that the evidence was heard at a time when the rules of evidence did not apply. The court expressed that it did not believe there was "a notice problem" as the evidence had previously been raised before the court and the parents were well aware that it was going to be discussed.

Evidence was then introduced that in May of 2014, Father choked Mother with his legs and threatened her by saying, "Bitch, I'm going to give you a dirt nap." Mother hit Father in the

5

face with a hammer knocking out some of his teeth. This occurred during a time that the parents were having unsupervised visitation with S.F.M.D. Father testified that, at the time of the incident, S.F.M.D. was across the street with another son of Father and a "baby mama" of Father.

On December 31, 2014, the Family Court entered Findings of Fact and Conclusions of Law sustaining the Juvenile Officer's allegations as amended in open court. On January 23, 2015, a dispositional hearing was held. Thereafter, the court made Findings and Recommendations, including that the child continue in the custody of the Children's Division. Father and Mother appeal.

## Standard of Review

We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re A.G.R.*, 359 S.W.3d 103, 108 (Mo. App. 2011). We consider the evidence in the light most favorable to the circuit court's ruling and ignore any evidence to the contrary. *In re A.M.S.*, 272 S.W.3d 305, 307 (Mo. App. 2008); *In re B.J.K.*, 197 S.W.3d 237, 247 (Mo. App. 2006). Pursuant to Rule 116.02, at all juvenile hearings involving adjudication of a petition's allegations, the rules of evidence shall apply. The court's evidentiary decisions are reviewed for abuse of discretion. *McGuire v. Kenoma*, 375 S.W.3d 157, 164 (Mo. App. 2012).

## Points on Appeal

Father asserts eleven points on appeal and Mother asserts six. As all of Mother's points coincide to an extent with various points raised by Father, we address Father's and Mother's points together and note the variances when applicable.

**Point I**

In Father's first point on appeal, he contends that the trial court erred in applying Section

211.037[2] (non-offending parent statute) and Section 211.447 (termination of parental rights

statute) and relying on facts and events not specifically alleged in the petition, arguing that due

process and Section 211.091 require that an exercise of jurisdiction under Section 211.031 be

based on facts and events specifically alleged in the petition. We find no error.

The Juvenile Officer's petition alleged in Count II:

1. The minor child is without proper care, custody and support necessary for his wellbeing and is subject to this Court's jurisdiction pursuant to Section 211.031.1 RSMo. in that his father abuses and neglects him.

2. On or about August 28, father hit mother in the head while wearing brass knuckles. On or about August 29, 2013, father hit and punched mother while she was holding the child. Additionally, the child suffered several rib fractures while in his father's care, as diagnosed by Children's Mercy Hospital staff on September 18, 2013.

3. Father has a history of violence and criminal action that impairs his parenting ability. In Case Number 16CR99001774-01, father [under a different name] pleaded guilty to Felony Distribution of a Controlled Substance near Schools.

4. Father's actions place the child at risk of further harm and neglect absent this Court's intervention.

With regard to these allegations, the court made numerous findings of fact including that

the child had four rib fractures that were a serious condition that could not have been self-

inflicted by a four-month-old infant, that based on the testimony and documentary evidence

provided, the child's four rib fractures occurred while in the care and custody of Father and

Mother, and that, there was no evidence that the child was injured outside of the parents' care.

The court noted that Mother had reported the child being increasingly fussy on August 29, 2013,

---

[2]All statutory references are to the Revised Statutes of Missouri as updated through the 2014 cumulative supplement unless otherwise noted.

and that the child cried and did not want to be held. Mother also reported that Father had grabbed the child from Mother's arms multiple times on that date and that Father also hit and punched Mother while she held the child in her arms.[3] The court concluded that, based on the medical records, testimony of a Nurse Practitioner, and testimony of Mother, the child's rib fractures occurred on August 29, 2013.

In its conclusions of law, the court found by clear and convincing evidence that the child's rib fractures occurred in the parents' care and custody. The court found that "[a]lthough there is no evidence that the child was intentionally injured by those responsible for his care, custody and control, the child suffered serious injuries while in the care custody and control of his parents and those injuries could not have been self-inflicted." In addition the court stated:

> Father'[s] prior criminal history is one that gives the Court great concern about his ability to provide for the child's care, custody and control. Father has spent at least 8 of the last 15 year[s] incarcerated for Distribution of a Controlled Substance in Case Number 16CR99001774-01. Section 211.037 RSMo. provides the court with a list of conduct for which a parent would not be entitled to custody, if only one parent is subject to an investigation of abuse or neglect. Section 211.037.1(3) specifically lists a series of behavior and circumstances which would preclude custody, which includes 'a history of criminal behaviors, drug or alcohol abuse, child abuse or child neglect, domestic violence . . ." In this case, father has a criminal history, but was released from his incarceration five years before the child's birth. Father also has a pattern of domestic violence, including punching and hitting mother on August 28, and 29, 2013 and choking mother and threatening her in late May 2014. Father also has a pattern of alcohol use that impairs his parenting due to mother's statements that he often shows up to her house drunk, and the May 2014 domestic violence incident was after father had been drinking. Additional testimony has been presented that father drinks approximately six to twelve beers a night.

> Because father's actions would preclude him as a non-offending parent under Section 211.037 RSMo., this court finds that he has also neglected the child as determined by Section 210.110(12) RSMo. in that he has failed 'to provide . . . the proper or necessary support . . . any other care necessary for the child's well-being.'

---

[3]The court also found that on August 28, 2013, Father beat mother in the head with brass knuckles.

Father contends on appeal that, because the court referenced Section 211.037 in conjunction with its neglect finding and Section 211.037 was not pled by the juvenile officer, Father was deprived of due process because Father had not invoked Section 211.037 and had no notice that his qualifications under Section 211.037 were at issue. We disagree.

First, it was not necessary for Father to invoke Section 211.037 in order for the court to indirectly consider the factors therein described in connection with determining whether Father neglected his child pursuant to Section 210.110(12). Section 211.037 requires the court to first consider placing an abused or neglected child with a non-offending parent before placing the child in State custody or elsewhere. *See In re A.R.*, 330 S.W.3d 863, 864 (Mo. App. 2011).

Second, all of the Section 211.037 factors considered by the court, with the exception of Father's alcohol use which arose at trial in connection with evidence supporting the Juvenile Officer's allegations of domestic violence, were pled in some fashion in the Juvenile Officer's petition. The Juvenile Officer's petition alleged abuse and neglect of the child, acts of violence against the child's mother, and "father's history of violence and criminal action that impairs his parenting ability." Viewed in context, the court's judgment explains that, while the child was injured in the care of both Father and Mother and during such time as Father was engaging in violent behavior in close proximity to the child, there was no evidence that Father actually inflicted the physical injuries upon the child. Nevertheless, even if Father did not cause the child's physical injuries, he failed to provide the proper care necessary for the child's well-being by engaging in other concerning behaviors, and the Section 211.037 factors lent support to that conclusion.

Father also contends that his due process rights were violated when the court inappropriately considered termination of parental rights standards in its adjudication. We disagree.

In its conclusions of law, the court detailed episodes of violence between Father and Mother that occurred while the child was in parental custody and continued to occur after the child was removed from parental custody. The court noted that, Father hit Mother in the head with brass knuckles on August 28, 2013, that Father repeatedly punched Mother on August 29, 2013, while the four-month-old minor child was in her arms, that Father choked Mother and threatened to kill her in May of 2014, and that Mother hit Father in the face with a hammer knocking out some of his teeth. After detailing these episodes of violence, the court noted that a court is allowed to consider evidence regarding a pattern of domestic violence as evidence of unfitness in a termination of parental rights case[4], and, "[s]ince an ongoing pattern of domestic violence is sufficient grounds for termination of parental rights, clearly it is sufficient to support grounds for removal of a child from a parent's custody." The court did not rest on this postulate, however, in sustaining the Juvenile Officer's petition alleging the child to be without proper care, custody, and support. After making this statement, the court spoke directly to the facts of this

[4]Although the court cited Section 211.447.4(6), it was likely referencing Section 211.447.5(6)(a) which states that:

> The juvenile officer or the division may file a petition to terminate the parental rights of the child's parents when it appears that one or more of the following grounds for termination exist: The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.

10

case by reiterating all of the concerning incidents of domestic violence, noting that the domestic violence was increasing between Father and Mother within the child's home, and stating:

> This pattern of domestic violence renders both parents unfit to be a party to the parent and child relationship. . . . The evidence in this case supports finding by a clear and convincing standard the child has come within the applicable provisions of Section 211.031.1(1) in that the environment in mother and father's home is injurious to the child's welfare.

Thus, it is clear from the record that the court noted the termination of parental rights statute to lend support to its ultimate conclusion that the parents had failed to provide proper care for the child by providing a home for the child that was rife with violence, but its assumption of jurisdiction was based on an application of the facts of this case to Section 211.031.1.

We conclude that Father did not suffer due process violations when the court considered the Section 211.037 factors in its judgment and referenced the termination of parental rights statutes. The Juvenile Officer's petition gave Father notice of the allegations that led to the court's ultimate finding that the child was in need of care and treatment, and the court justifiably reviewed the Section 211.037 factors. Father's first point on appeal is denied.

**Point II**

In Father's second point on appeal, he contends that the trial court erred in admitting the petition for order of protection in Exhibit 1 because this court has already ruled that Mother's hearsay statements in the petition may not be used as substantive evidence against Father and, even if the petition was a certified record, a certified record may not be introduced as evidence of the truth of the matters asserted therein. Father argues that the court admitted Mother's hearsay statements in the petition as substantive evidence against him, admitted the petition as a certified record even though the petition is not certified, and admitted the petition as a certified record as evidence of the truth of the matters asserted therein. Mother makes a similar claim in her first

11

point on appeal. She argues that the court plainly erred in admitting the petition as it should not have been used as substantive evidence against her, that the opposing party doctrine is inapplicable, and that the weight of the evidence is against the trial court's finding that the sworn statement from the petition was more credible than Mother's testimony. We find no error.

"The standard of review for the admission of evidence is abuse of discretion." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). The trial court has broad discretion in choosing to admit evidence and we will not disturb this discretion unless it is against the logic of the circumstances and so unreasonable as to show a lack of careful consideration. *State v. Freeman*, 269 S.W.3d 422, 426 (Mo. banc 2008). "For evidentiary error to cause reversal, prejudice must be demonstrated." *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006).

We first note that similar claims were made by Father and Mother in their first appeal of this case. In *In re S.F.M.D.* we found that: (1) Mother's petition for order of protection could be admitted pursuant to Section 490.130 as evidence of the fact that it was filed, but not as evidence of the truth of the matters asserted within that petition, (2) Mother's petition met the criteria for an admission of a party opponent, (3) Mother's petition was properly admitted as substantive evidence against Mother, who, by signing the petition, was deemed to have admitted the averments contained therein, and (4) The petition could not be considered substantive evidence of the truth of the matters asserted therein against Father, but "could most certainly be utilized to impeach testimony by Mother, to the extent her testimony is contrary thereto, and used against Father in that manner." 447 S.W.3d at 767-768.

12

To the extent that Father and Mother repeat the same claims made in their first appeal, those claims are barred from consideration by the law of the case doctrine. "[T]he law of the case doctrine bars relitigation of issues that could have been raised in a previous appeal[.]" *Jenkins v. Jenkins*, 406 S.W.3d 919, 924 (Mo. App. 2013). The law of the case doctrine governs successive cases that involve the same facts and issues and applies to all points presented and decided as well as all matters that might have been raised but were not. *Id.* at 923. Thus, we will not examine or reexamine Father and Mother's claims regarding the admissibility of the petition because of its status as a certified record or its purported unreliability because these claims have either already been addressed by this court or were waived by failure to raise them below.

The only claims in Father's second point and Mother's first point not previously addressed or otherwise precluded from review are Father's contention that the court admitted Mother's hearsay statements within the petition for order of protection as substantive evidence against Father, and Mother's contention that it was against the weight of the evidence to find that the statements in Exhibit 1 were more credible than her trial testimony. We find that Father and Mother fail to prove these claims.

Mother testified at trial. Mother's petition for order of protection was admitted into evidence as an admission of a party opponent and was used by the Juvenile Officer to impeach Mother's trial testimony. In its judgment, the court found Mother's testimony to lack credibility and found Mother's prior sworn statements within the petition for order of protection to be credible. We defer to a trial court's credibility determinations. *State v. Sisco*, 458 S.W.3d 304, 312 (Mo. banc 2015). Mother nonetheless argues that we should not defer to the trial court's credibility determination because even if the trial court refused to believe Mother's trial testimony, it could not have found the statements in Exhibit 1 to be true given several questions

13

she raised about the authenticity of the document. Specifically, Mother questioned why the caseworker who prepared Exhibit 1 is not identified; why Exhibit 1 is not in Mother's handwriting except for Mother's signature; whether the caseworker who prepared Exhibit 1 did so from notes or while speaking with Mother; whether Mother's signature affirming the truth of the content of Exhibit 1 is ambiguous because of non-sequential page numbering on the Exhibit; and other such concerns. Mother failed to assert in either the first trial or on remand any objection to the admission of Exhibit 1 on the basis of its lack of authenticity. Cognizant of this fact, Mother does not claim error in the admission of Exhibit 1 based on authenticity concerns. Instead, Mother argues that because the Juvenile Officer did not address or resolve the authenticity concerns Mother raised after Exhibit 1 was admitted into evidence, the trial court could not have found the statements in Exhibit 1 to be truthful as a matter of law. Mother cites no authority for this proposition and it is rejected. Mother's point one on appeal is denied.

The fact that Father was indirectly impacted by the impeachment of Mother because the court concluded after Mother was impeached that the events within the statement had occurred does not mean that the court summarily admitted the petition for use as substantive evidence against Father. "[I]n a court-tried case, a judge is presumed to be able to disregard improper material . . . ." *State v. Brooks*, 394 S.W.3d 454, 457 (Mo. App. 2013). Regardless, even if Father could prove error, he fails to prove prejudice.

Father argues that the order of protection was the only evidence presented to allow the court to sustain the Juvenile Officer's allegations that on August 28, 2013, Father hit mother on the head while wearing brass knuckles and that on August 29, 2013, Father hit and punched mother while she was holding the child. We disagree. Mother testified and was questioned regarding these events. Her testimony also allowed the court to reach these conclusions.

14

Although Mother denied most of the statements contained within the petition for order of protection at trial, she had alternate explanations for those statements. One explanation for the petition's allegation that Father repeatedly hit Mother during the week prior to the filing of the petition was: "The hitting that I did say, because like I said, when [Father] took the baby from the car seat and I was grabbing him, he was snatching me – snatching from me and doing like this, and he hit me in the head." Mother testified that the "hitting" was not intentional, however. Mother's explanation for the statement in the petition for order of protection that Father punched her repeatedly as she held the baby in her arms was that Father had grabbed the baby from her, she took the baby back from him, and then he took the baby back again.

Children's Division Investigator Brittany Paris also testified. She testified that Mother had reported to her that she and Father had engaged in a physical altercation on August 29, 2013, and that there had been "domestic violence" for three months prior to that.

After considering the evidence, the court concluded that "father did hit mother in the head with brass knuckles and did punch her repeatedly while she held this child." We note, however, that while the court sustained these two instances of domestic violence as having occurred and as examples of the neglectful and harmful environment in which the parents had placed the child, the court articulated additional concerns that led to its assumption of jurisdiction pursuant to Section 211.031. The court expressed a belief that the child sustained serious non-accidental injuries while solely in parental care and during such time as the parents were engaged in violence in close proximity to the child. The court articulated concerns regarding "increasing domestic violence by father towards mother in the weeks leading up to the August 28 and August 29 violent incidences[,]" as well as May 2014 domestic violence where Mother hit Father with a hammer, knocking out several of his teeth, and Father restraining

15

Mother with his legs, choking her and threatening that he was going to give her a "dirt nap." The court expressed concern that the May 2014 incidents occurred while the parents had unsupervised visitation with the child and the child was supposed to be with them when the incident occurred.

Thus, evidence of not just the brass knuckles and punching incident, but evidence of a "pattern of domestic violence" present within the child's household, led the court to conclude that there was clear and convincing evidence that Father and Mother's home was injurious to the child's welfare and, therefore, the child came within the applicable provisions of Section 211.031.1(1). Father fails to show that, absent the petition for order of protection, the court would not have reached this same conclusion given all of the other evidence relied upon by the court.

We conclude, therefore, that the court did not abuse its discretion or plainly err in admitting the petition for order of protection in Exhibit 1. The petition for order of protection was not admitted for use as substantive evidence against Father. Further, the petition was not the only evidence used by the court to conclude that the brass knuckle and punching incidents occurred. Finally, Father fails to prove prejudice and show that, even if the petition was erroneously admitted, the court would not have otherwise determined that Father was neglectful and provided a home for the child that was injurious to his welfare. Father's second point on appeal is denied.

**Point III**

In Father's third point on appeal, he contends that the trial court erred in inferring by clear and convincing evidence that the child's rib fractures were caused non-accidentally on August 29, 2013, while the child was in the parents' custody. He argues that medical causation

16

must be established by qualified expert testimony and the only medical expert offered at trial testified that it would be totally speculative to determine the cause of the child's rib fractures. Father argues that "the trial court erroneously declared and/or applied Missouri law by inferring from lay evidence the child's rib fractures were non-accidentally caused on August 29, 2013." Mother makes a similar claim in her second point on appeal, but argues instead that the trial court's judgment was not supported by substantial evidence because it was too speculative for the trial court to find by clear and cogent evidence that the child's rib fractures were non-accidentally caused on August 29, 2013. We find no error.

We first note that Father and Mother made a related claim in their first appeal of this case. Therein, the parents argued that because Nurse Practitioner Amy Terreros's testimony was not based on sufficient evidence or reliable data, and her opinions were only offered in terms of possibility, the trial court erred in admitting expert medical testimony from Terreros regarding the existence of rib fractures on x-rays, the possible age of such fractures, and the possible causes of such fractures. *In re S.F.M.D.*, 447 S.W.3d at 765-766. In response, this court detailed Terreros's qualifications and experience and concluded that "[t]he Family Court certainly did not abuse its discretion in finding that Terreros qualifies as a medical expert based upon her knowledge, education, training, and experience." *Id.* at 766. We went on to discuss that, while Terreros testified that she was capable of diagnosing infant rib fractures from x-rays and could see the healing fractures on S.F.M.D.'s x-ray films, her testimony reflected that she had relied upon the diagnosis made my Dr. Christopher Keup in his skeletal survey report as to the existence of healing rib fractures. *Id.* Keup's report was admitted into evidence and not challenged on appeal. *Id.* "[N]o testimony or evidence was admitted at trial that could be

17

viewed as challenging Dr. Keup's diagnosis regarding the existence of healing rib fractures on September 18." *Id.* We further stated:

> Appellants' real complaints relate to Terreros's testimony regarding how long it takes for rib fractures to show up in x-rays and the possible causes of S.F.M.D.'s rib fractures. While Appellants contend that Terreros improperly opined on the age of the rib fractures, her testimony in this area was actually limited to stating that, based upon her education and review of scientific literature on the subject, it takes seven to ten days before callous formation, like that appearing in S.F.M.D.'s September 18 x-ray and upon which Dr. Keup's diagnosis of healing rib fractures was based, becomes visible in x-ray films. She stated that S.F.M.D.'s rib fractures, therefore, occurred at least seven to ten days prior to September 18 and could have occurred prior to August 30, despite not appearing in the x-rays taken that day. The trial court properly determined that Terreros was qualified to offer such testimony based upon her education, experience, and review of scientific literature.

> As to the possible causes of S.F.M.D.'s rib fractures, Terreros testified regarding the multiple known potential causes for rib fractures in an infant and which of those potential causes she had ruled out based upon S.F.M.D.'s medical history, the tests that had been performed, and her examination of him. Such matters appear well within the purview of a nurse practitioner specializing in the treatment of potentially abused children. The trial court did not err in allowing such testimony based upon Terreros's knowledge, skill, experience, training, and education.

*Id.* at 766-767.

In this appeal, Father asserts that the court erred in inferring that the child's injuries were caused non-accidentally on August 29, 2013, while the child was in the parents' custody, because "medical causation must be established by expert medical testimony." Mother argues that the evidence was too speculative for the court to conclude that the parents neglected the child.

First, we disagree with Father's suggestion that expert medical testimony was necessary in this case to pinpoint the exact day, the exact cause, or the exact perpetrator of the child's rib fractures. The Juvenile Officer alleged, among other things, that S.F.M.D. came within the

18

jurisdiction of the court because the parents abused and/or neglected S.F.M.D., evidenced in part by the child sustaining inexplicable rib fractures while the child was in the care of the parents.

The child was removed from parental custody on August 30, 2013. An August 30, 2013, skeletal survey showed no fractures present. Nurse Practitioner Amy Terreros testified, however, that fractures in infants and children may take between seven to ten days to appear on x-rays. Terreros testified that S.F.M.D.'s fractures could have been present during the first skeletal survey August 30, 2013, but not yet visible on the x-rays. A September 18, 2013, skeletal survey revealed healing fractures to four of S.F.M.D.'s ribs. Terreros testified that, S.F.M.D.'s rib injuries represented non-accidental trauma that was concerning for child abuse. She explained that, even vigorous application of CPR to an infant does not inflict rib fractures. She testified that rib fractures in an infant are typically caused by "compressive forces or a direct blow, blunt force trauma." She testified that the parents had no explanation for the injuries.

Terreros testified that Mother did report to her, however, that on August 29, 2013, Father "had grabbed the baby from her arms on multiple times." Terreros testified that routine passing of a child from one caregiver to another will not cause rib fractures, but the compressive forces involved in a forceful grab could cause a rib fracture. It appears from the record that Mother did not inform Terreros that Father also hit and punched Mother repeatedly on August 29, 2013, while Mother held the child in her arms. However, this evidence is in the record and was before the court.

S.F.M.D.'s foster mother testified that S.F.M.D. was not dropped, shaken, or otherwise injured while in her care. The foster mother testified that she was with Mother when Mother first learned that S.F.M.D. had sustained rib fractures. She testified that Mother told her that she thought the baby might have had colic just before he was taken into care by the State because he

19

uncharacteristically did not want to be picked up or held, cried and fussed when he was picked up and held, and was unable to be soothed when he was picked up and held.

The court concluded that, the child's rib fractures occurred while the child was in the parent's care and custody based on Nurse Terreros's testimony that some nonverbal infants express pain by excessive crying and fussiness when held, and that, the only reported incident of the child being fussier than normal was just after Father repeatedly hit and punched Mother while she was holding the child.

The parties focus on the court's finding that the child's ribs were broken on August 29, 2013, and assert that such an inference drawn by the court based on the evidence was unreasonable. We disagree as there is substantial evidence in the record to support this conclusion. Based on Terreros's testimony, S.F.M.D.'s injuries could have been inflicted as early as August 20, 2013, and as late as September 11, 2013. Records from Children's Mercy Hospital confirmed that the September 18, 2013, x-rays of the child's ribs revealed "circumferential callus [surrounding] the anterolateral right fourth, fifth, sixth, and seventh ribs, *compatible with healing fractures*." (Emphasis added). Terreros testified that blunt force trauma, as well as compressive force, can cause the type of injuries sustained by S.F.M.D. On August 29, 2013, Father grabbed S.F.M.D. from Mother multiple times. Also on August 29, 2013, Mother held the baby as Father repeatedly punched Mother. After these incidents, Mother observed the child to be uncharacteristically fussy and inconsolable. The medical expert testified that some nonverbal infants express pain by excessive crying and fussiness when held.

While there was no evidence that, Father also hit the child as he punched mother, with what measure of force Father "grabbed" the child, or with what measure of force Mother held S.F.M.D. as she received Father's repeated punches, there was substantial evidence to support an

20

inference that, while S.F.M.D. may not have been an intended target, his non-accidental injuries were sustained in the midst of the chaos. Given the evidence and that the victim is a four-month-old nonverbal baby whom the parents were obliged to protect, the court's finding that a non-accidental injury of this nature occurred to the child while the child was solely within parental care and custody was ample support for sustaining the Juvenile Officer's allegations of abuse and neglect.

We conclude, therefore, that the trial court did not err in inferring by clear and convincing evidence that the child's rib fractures were caused non-accidentally on August 29, 2013, while the child was in the parents' custody, as expert medical testimony was not necessary in this case to pinpoint the exact day, the exact cause, or the exact perpetrator of the child's rib fractures to allow the court to reach these conclusions. Father's third point on appeal is denied. Further, the evidence was not too speculative so as to deny the court substantial evidence from which it could make a finding that the child was non-accidentally injured on August 29, 2013. Mother's second point on appeal is denied.[5]

**Point IV**

In Father's fourth point on appeal, he contends that the trial court erred in inferring by clear and convincing evidence that the child's rib fractures were non-accidentally caused on August 29, 2013, while in the parents' custody, because such finding erroneously applied the law, was without sufficient evidentiary support, and was against the weight of the evidence in that: (1) The court improperly shifted the burden of proof onto father, (2) Mother's hearsay statements

_____

[5]Unlike the Family Court's first order in this case which sustained the Juvenile Officer's allegations based on the limited finding of "an extremely high likelihood" S.F.M.D. suffered broken ribs at some point while in the care of Father and Mother, the court's second order articulates factual findings of the court, and the rationale behind those findings, in detail. By satisfying its obligation under Section 211.181 to enter specific factual findings supportive of its finding that S.F.M.D. was in need of care and treatment, the Family Court has provided this court with an adequate record from which we can provide a meaningful review of Father and Mother's claims.

21

in Exhibit 1 cannot be used substantively against Father, (3) There was no evidence Father's handling of the child caused rib fractures, and (4) X-rays taken on August 29, 2013, undisputedly revealed the child had no fractures at that time. Mother makes a similar claim in her second point on appeal which we have already denied.

For the reasons set forth in our discussion of Points II and III above, we deny Father's fourth point. Substantial evidence supported the court's conclusion that clear and convincing evidence showed that the child's injuries were non-accidental. Substantial evidence also supported the trial court's conclusion that clear and convincing evidence showed that the child's serious non-accidental injuries occurred while the child was in the care and custody of the parents. We find no merit in Father's contention that the burden of proof was shifted.

**Point V**

In Father's fifth point on appeal, Father contends that the trial court erred in sustaining allegations that Father abuses or neglects the child because this court has already ruled a parent's inability to explain how an injury occurred or the fact an injury occurred in a parent's custody, without more, does not constitute abuse or neglect as a matter of law, in that the trial court merely found the child was injured in Father's custody and Father was unable to explain how the child was injured. Mother makes a similar claim in her fifth point on appeal, alleging that the court erred in sustaining the allegations that Mother abuses or neglects the child. We find no error.

In *In re S.F.M.D.* we did state that, "[w]ithout more, a parent's lack of knowledge of when and how an injury occurred is not sufficient to establish that they abused or neglected their child." (Emphasis added). 447 S.W.3d at 764. This common sense statement was made in the context of our holding that "[b]ecause the Family Court failed to satisfy its statutory obligation

22

under § 211.181 to enter specific factual findings supportive of its finding that S.F.M.D. was in need of care and treatment, this Court cannot know what specific facts were found to exist and cannot meaningfully review the Family Court's judgment." *Id.* at 765. In the court's second judgment, however, the court provided detailed factual findings and conclusions of law allowing this court to review that judgment in concert with the evidence and conclude that, in this case, more than the parents' professed lack of knowledge regarding the child's injuries supported sustaining the allegations.

Father and Mother ignore that in *In re S.F.M.D.* we also stated: "The fact that Father punched Mother while she was holding S.F.M.D. might well be sufficient to support a finding of neglect or abuse on the part of Father but, from the judgment rendered, we cannot know if the trial court did or would have found abuse or neglect based on that fact alone." *Id.* at 764. "The evidence could also support additional findings bolstering the ultimate finding of abuse and neglect on the part of Father beyond the singular instance of striking Mother while she held the child." *Id.* at 765. "Certainly, evidence was presented that might support additional findings that could support an ultimate finding of neglect on the part of Mother, especially if she is found to be insistent on continuing to live with and expose S.F.M.D. to an abusive or violence prone Father." *Id.*

We conclude that the trial court did not err in sustaining the allegations that Father and Mother abuse and/or neglect the child. The court articulated in its findings of fact and conclusions of law substantial evidence within the record to support the court's findings of abuse and neglect beyond that the child's injuries inexplicably occurred while in parental care and custody. Evidence of extreme violence within the household and in close proximity to the child during the time the child was injured, continued violence even after removal of the child from

23

parental custody, Mother's return to Father only to engage in more violence, and both Mother and Father's denial of violence at trial, justified the court's findings of abuse, neglect, and the inability of the parents to protect the child and his welfare. Father's and Mother's fifth points on appeal are denied.

**Point VI**

In Father's sixth point on appeal, he contends that the trial court erred in sustaining the co-occurrence allegations because a causal nexus between domestic violence and risk of harm to the child must be established by clear and convincing evidence and by qualified expert testimony, in that the only expert offered at trial testified that harm is unlikely to occur based on the medical, scientific, and psychological literature. Mother makes a similar claim in her fourth point on appeal.

We find nowhere in the record that "co-occurrence allegations" were ever made or that the court sustained "co-occurrence allegations." The only discussion in the court's judgment regarding "co-occurrence" is found in its findings of fact regarding the testimony of Nurse Terreros. The court found:

> [Nurse] Terreros also testified that she did have training regarding domestic violence and the co-occurrence of child abuse. Ms. Terreros testified that in approximately thirty to fifty percent of cases, there is a co-occurrence of child abuse when there is domestic violence. There are long-term adverse health effect[s] of witnessing violence in the home, per the Adverse Childhood Experiences study by Dr. Vincent Felitti in the Centers for Disease Control.

Beyond this, "co-occurrence" is not mentioned in the judgment.

The parents argue that the Juvenile Officer alleged that the child was at risk of future harm by proximity to domestic violence between the parents, and suggest that by sustaining this allegation the court sustained "co-occurrence allegations." The Juvenile Officer, however, never

24

made this allegation. After setting forth various allegations, including that the parents abused and/or neglected the child, that the child had suffered inexplicable rib fractures while in the parents' care, specific incidents of domestic violence while the child was in parental care, and that Father had a history of crime and violence that impaired his parenting abilities, the Juvenile Officer alleged that the parents' "actions" placed the child at risk of further harm and neglect. This is not the same as alleging that the child was at risk of future harm by proximity to domestic violence.

In sustaining the allegation that parental "actions" placed the child at risk of further harm and neglect, the court discussed various concerning "actions" by the parents. In addition to the specific domestic violence incidents that occurred prior to the child's removal, the court also found concerning: Father's alcohol use which appeared to contribute to the domestic violence; Father's denial of domestic violence, although his missing teeth suggested that his prior report that Mother knocked his teeth out with a hammer was more credible than his denial; Mother's denial of domestic violence in spite of her prior statements, including a sworn statement, regarding the violence; Mother's return to Father and/or continued residency with Father in spite of the violence that occurred while the child was present, and; the parents' continued engagement in extremely violent domestic behavior almost nine months after the State first intervened on behalf of the child and during a time where the parents were allowed unsupervised visitation with the child.

We find that the trial court's judgment does not reflect that the court sustained the Juvenile Officer's allegation that parental actions placed the child at risk of further harm and neglect based upon "co-occurrence" percentages or data requiring expert medical proof as the parents contend but, rather, that the court sustained the Juvenile Officer's allegation based on the

specific evidence in this case regarding parental actions that placed the child at risk of further

harm and neglect. Father's sixth point on appeal is denied and Mother's fourth point on appeal is

denied.

**Point VII**

In Father's seventh point on appeal, he contends that the trial court erred in admitting

Exhibit 2 because evidence of prior crimes must be logically and legally relevant and such

evidence is never admissible to demonstrate criminal propensity, in that Father's prior conviction

occurred in 1999 and was not offered for any purpose except to demonstrate Father's criminal

propensity. We find no error.

As noted above in Point II, "[t]he standard of review for the admission of evidence is

abuse of discretion." *Primm*, 347 S.W.3d at 70. To prevail on such a claim, prejudice as well as

error must be established. *Reed*, 282 S.W.3d at 837.

> The trial court in a court-tried case is allowed wide latitude in the admission of
> evidence because it is presumed that it will not give weight to evidence that is
> incompetent. Because of this presumption, it is difficult to base reversible error
> on the erroneous admission of evidence in a court-tried case. This court presumes
> on review that inadmissible evidence is not prejudicial unless it is clear the trial
> court relied on that evidence in arriving at its findings of fact and conclusions of
> law.

*Lee v. Lee*, 967 S.W.2d 82, 86 (Mo. App. 1998) (internal citations omitted).

In order to be admissible, evidence must be both logically and legally relevant. *State v.*

*Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). "Evidence is logically relevant if the evidence

tends to make the existence of material fact more or less probable." *State v. Quick*, 334 S.W.3d

603, 609-10 (Mo. App. 2011) (citing *Anderson*, 76 S.W.3d at 276). "Evidence is legally relevant

if its benefits outweigh its costs, including unfair prejudice, confusion of the issues, undue delay,

waste of time, or cumulativeness." *Id.*

The Juvenile Officer alleged that, "Father has a history of violence and criminal action that impairs his parenting ability," and that, "[i]n Case Number 16CR99001774-01, father [under another name] pleaded guilty to Felony Distribution of a Controlled Substance near Schools." At the adjudication hearing, the Juvenile Officer offered into evidence certified copies of court documents establishing that Father had a prior felony criminal conviction in 1999. The documents included a copy of the Complaint filed against Father for his criminal charge of Distributing Controlled Substances Near Schools, as well as copies of the Information sheet, Probable Cause statement, and Judgment entered against him. Father objected to the admission of the records, arguing that they were not relevant to the allegations asserted in the Petition and were so remote in time as to preclude their admissibility. The trial court overruled the objection, concluding that, while the remoteness of the conviction might affect its probative value, it did not render the evidence inadmissible.

We find that evidence of Father's criminal conviction was logically and legally relevant to the Juvenile Officer's allegation that Father had a history of criminal action that impaired his parenting. Consequently, the court did not abuse its discretion in admitting it. Further, nothing within the record suggests that the evidence was offered or used for the purpose of demonstrating Father's criminal propensity, as Father alleges. The court stated in its judgment: "Father'[s] prior criminal history is one that gives the Court great concern about his ability to provide for the child's care, custody and control. Father has spent at least 8 of the last 15 year[s] incarcerated for Distribution of a Controlled Substance in Case Number 16CR99001774-01." The court discussed that a history of criminal behaviors is one factor that might preclude placement of a child with a parent if Section 211.037.1(3) were applicable. Nevertheless, with regard to

27

Father's criminal history the court noted that, "In this case, father has a criminal history, but was released from his incarceration five years before the child's birth."

Thus, the record is clear that Father's criminal history was considered by the trial court in the context of Father's alleged abuse and/or neglect of the child, not as propensity evidence. Consequently, even if Father could prove that the evidence should not have been admitted, he fails to overcome our presumption that the evidence was not prejudicial as he fails to show that the court relied improperly on that evidence in arriving at its findings of fact and conclusions of law. Father's seventh point on appeal is denied.

## Point VIII

In Father's eighth point on appeal, he contends that the trial court erred in finding by clear and convincing evidence that the child is at risk of harm in the future, and/or that Father's parenting ability is impaired due to Father's prior conviction, because a causal nexus was not established by qualified expert testimony in that no expert testimony was offered to establish the child would likely be harmed by Father's conduct in 1999 and/or Father's parenting ability. We find no error.

The trial court did not find that Father's parenting ability is impaired solely due to Father's prior conviction or that the child would likely be harmed solely by Father's conduct in 1999. The Juvenile Officer did not plead, and the court did not find, that Father's prior conviction, in and of itself, created a future risk of harm or impaired Father's parenting ability.[6] The Juvenile Officer pled that the minor child was without proper care, custody and support necessary for his wellbeing and was subject to the court's jurisdiction pursuant to Section

---

[6] We note that there was much evidence in the record of uncharged "criminal action" by Father in the form of domestic violence.

28

211.031.1 because, in part, Father abuses and neglects him. Thereafter, among other allegations, the Juvenile Officer alleged that Father's historical violence *and* criminal action impaired Father's parenting ability. The Judgment shows that the court considered Father's criminal history in the context of, even if Father could prove he were the non-offending parent with regard to the child's broken ribs, his overall "actions," which included his prior criminal activity, his pattern of violent conduct toward the child's mother, and his alcohol consumption of six to twelve beers a night which had been shown to precede very violent behavior, rendered the Father unfit at that time to have custody of the child. Father's further inability to provide the child with an environment not injurious to the child's welfare rendered the child without proper care, custody and support necessary for his wellbeing.

We conclude that the trial court did not err in sustaining the Juvenile Officer's allegations, as pled by the Juvenile Officer, as substantial evidence supported the court's findings and the court's findings of abuse and neglect did not rest solely on Father's prior conviction. Father's eighth point on appeal is denied.

**Point IX**

In Father's ninth point on appeal, Father contends that the trial court erred in admitting and relying on testimony regarding an incident between the parents in May 2014 because evidence supporting jurisdiction under Section 211.031 must be logically and legally relevant to the allegations in the petition. He argues that the May 2014 incident was not alleged in the petition and had nothing to do with the child, and the trial court believed the rules of evidence did not apply when the evidence was admitted. Mother makes a similar claim in her third point on appeal.

In *In re S.F.M.D.*, this court remanded the case back to the trial court so that the court could enter "a judgment complying with the fact finding requirement of § 211.181." 447 S.W.3d at 765. We advised the court that, "[p]rior to entering such judgment, the Family Court is free, in its discretion, to reopen the case and to consider additional evidence, including evidence related to events that have occurred since the entry of the order of disposition." *Id.* On remand, the court took additional evidence. Evidence was introduced indicating that, in late May of 2014, Father restrained Mother with his legs, choked her, and threatened her by saying, "Bitch, I'm going to give you a dirt nap." Mother hit Father in the face with a hammer, knocking his teeth out. While the child did not witness this event, this incident occurred during a time that the parents were enjoying unsupervised visitation with the child. The court noted in its judgment that, "[a]lthough the latest domestic violence incident may not prove that the child was abused by his parents in August of 2013, it does prove that the parents' home environment was a dangerous one and injurious to his welfare at the time and continued to be a dangerous environment and injurious to his welfare."

We find no abuse of discretion in the trial court's admission of this evidence. It was logically and legally relevant to the Juvenile Officer's allegations that Father has a history of violence that impairs his parenting ability and that Father's and Mother's actions place the child at risk of further harm and neglect absent court intervention. According to Father, S.F.M.D. was across the street when this incident occurred. According to Mother, the incident was precipitated by Mother being angry with Father because Father was going to provide milk to another infant child of his, and Mother believed that they needed to be retrieving S.F.M.D. instead. This dispute over the needs of two infant children resulted in extreme violence. When the parents did eventually retrieve S.F.M.D., it can be presumed that he was greeted by a Father who, if not

30

appearing visibly injured, at the very least had less teeth in his mouth than when he had last been seen by the child. Given this evidence, it is disingenuous to suggest that this event had nothing to do with the child.

Additionally, we find no support in the record for the claim that the trial court believed that the rules of evidence did not apply when it admitted the evidence. To the contrary, the record reflects that, although the court had already heard the evidence, it expressed an intention to hear the evidence again because it was first before the court during a dispositional hearing when the rules of evidence did not apply. Father's ninth point on appeal is denied and Mother's third point on appeal is denied.

**Point X**

In Father's tenth point on appeal, Father contends that the trial court erroneously interpreted Section 210.145 as precluding it from considering the written results of the Children's Division's investigation at the disposition hearing because Section 210.145 only precludes evidence that a report of child abuse was made and the rules of evidence do not apply in a disposition hearing. Father argues that the result of the Children's Division's investigation was not raised at the disposition hearing to establish that a report of child abuse was made. Mother makes this same claim in her sixth point on appeal.

We find that we need not decide whether the trial court erroneously interpreted Section 210.145 because, as noted above, "[f]or evidentiary error to cause reversal, prejudice must be demonstrated." *Reed*, 282 S.W.3d at 837. The parents argue that, at the disposition hearing, they were prejudiced by the court's refusal to consider the Children's Division investigation results because the results showed that the State was unable to substantiate the allegations of domestic violence and child abuse or neglect. The Children's Division letter that parents were denied

31

admission, proposed Exhibit 5, stated that the Children's Division had received a report of child abuse/neglect alleging "blaming, verbal abuse, threatening, burns, scalding, lack of supervision, untreated illness/injury." The letter concludes that there was insufficient evidence to substantiate abuse or neglect regarding those allegations.

First, we note that the report was received prior to the discovery of S.F.M.D.'s broken bones and, therefore, it is impossible to discern from the context of the letter if investigation of those injuries were included within the results of that investigation. Regardless, the parents fail to explain how introduction of this letter at the disposition hearing would have invalidated the court's own findings of neglect and ongoing domestic violence injurious to the child's welfare or would have altered the court's disposition. The parents do not allege that the report contains evidence contradicting evidence relied upon by the trial court in reaching its disposition, such that the court's judgment or disposition might have been altered; the parents merely argue that the report contains information that the Children's Division was unable to substantiate allegations that it was investigating.

We find that, even if the trial court erroneously refused to admit the Children's Division's letter at the disposition hearing, the parents fail to prove that they were prejudiced by that refusal. Father's tenth point on appeal and Mother's sixth point on appeal is denied.

**Point XI**

In Father's eleventh and final point on appeal, Father contends that the trial court's placement of the child with the Children's Division due to concerns about Father's alcohol use was erroneous because the court's judgment must be supported by sufficient evidence, and the court's concerns about Father's alcohol use were based on pure speculation. We disagree.

32

First, in considering an appropriate placement for the child, the record reflects that the trial court placed the child in the custody of Children's Division due to a variety of concerns and not merely Father's alcohol use. Nevertheless, the court's concerns regarding Father's alcohol use were not purely speculative. The court found: "Father has a pattern of alcohol use that impairs his parenting due to mother's statements that he shows up to her house drunk, and the May 2014 domestic violence incident was after father had been drinking. Additional testimony has been presented that father drinks approximately six to twelve beers a night." These findings by the trial court were supported by substantial evidence at trial and the court did not err in taking this evidence into consideration when making its placement determination. Father's eleventh point on appeal is denied.

## Conclusion

After reviewing all of Father's and Mother's points on appeal we conclude that:

1.  Father did not suffer due process violations when the trial court considered the Section 211.037 factors in its judgment and referenced the termination of parental rights statutes. The Juvenile Officer's petition gave Father notice of the allegations that led to the court's ultimate finding that the child was in need of care and treatment, and the court justifiably reviewed the Section 211.037 factors.

2.  The trial court did not abuse its discretion or plainly err in admitting the petition for order of protection in Exhibit 1. The petition for order of protection was not admitted for use as direct substantive evidence against Father, and the petition was not the only evidence used by the court to conclude that the brass knuckle and punching incidents occurred. Further, Mother failed to prove that the trial court's credibility determination with regard to Mother's trial testimony and Exhibit 1 was against the weight of the evidence.

33

3. The trial court did not err in inferring by clear and convincing evidence that the child's rib fractures were caused non-accidentally on August 29, 2013, while the child was in the parents' custody, as expert medical testimony was not necessary in this case to pinpoint the exact day, the exact cause, or the exact perpetrator of the child's rib fractures to allow the court to reach these conclusions. Further, the evidence was not too speculative so as to deny the court substantial evidence from which it could make a finding that the child was non-accidentally injured on August 29, 2013.

4. Substantial evidence supported the trial court's conclusion that clear and convincing evidence showed that the child's injuries were non-accidental. Substantial evidence also supported the court's conclusion that clear and convincing evidence showed that the child's serious non-accidental injuries occurred while the child was in the care and custody of the parents.

5. The trial court did not err in sustaining the allegations that Father and Mother abuse and/or neglect the child. The court articulated in its findings of fact and conclusions of law substantial evidence within the record to support the court's findings beyond that the child's injuries inexplicably occurred while in parental care and custody.

6. The trial court did not sustain the Juvenile Officer's allegation that parental actions placed the child at risk of further harm and neglect based upon "co-occurrence" percentages or data requiring expert medical proof as the parents contend but, rather, the court sustained the Juvenile Officer's allegation based on the specific evidence in this case regarding parental actions that placed the child at risk of further harm and neglect.

34

7.  The trial court did not abuse its discretion in admitting evidence of Father's criminal conviction as it was logically and legally relevant to the Juvenile Officer's allegation that Father had a history of criminal action that impaired his parenting.

8.  The trial court did not err in sustaining the Juvenile Officer's allegations, as pled by the Juvenile Officer, as substantial evidence supported the court's findings.

9.  The trial court did not abuse its discretion in admitting evidence of a May 2014 incident of domestic violence.  The evidence was logically and legally relevant to the Juvenile Officer's allegations that Father has a history of violence that impairs his parenting ability and that Father's and Mother's actions place the child at risk of further harm and neglect absent court intervention.

10.  The parents are unable to prove that, even if the trial court erroneously rejected evidence regarding the results of a Children's Division investigation, the court's findings, conclusion, or disposition would have been different given its own findings in the case based upon the evidence before it.

11.  The trial court did not err in considering Father's alcohol use when placing the child with the Children's Division as the court's concerns regarding Father's alcohol use were not speculative and were supported by substantial evidence.

We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge
All concur.

35