**IN RE the ADOPTION OF:**
**S.J.B., a minor.**

**Lawrence County Juvenile Office,**
**Petitioner-Respondent,**

v.

**J.B., Respondent-Appellant.**

**No. SD 34850**

Missouri Court of Appeals,
Southern District,
Division Two.

FILED: September 27, 2017

J. Matthew Miller, of Springfield, MO, for Appellant.

William G. Petrus, Jr., of Mt. Vernon, MO, for Minor Child. (No brief.)

Darlene F. Parrigon of Pierce City, MO, for Respondent Lawrence County Juvenile Office. (No brief.)

Michael B. Bang of Springfield, MO, for Respondent Missouri Children's Division. (No brief.)

Susan Appelquist of Mt. Vernon, MO, for Respondents Cortney Reed and Kimberly Reed.

(Before Rahmeyer, C.J./P.J., Scott, J., and Francis, J.)

PER CURIAM.

Appellant J.B. challenges a termination of her parental rights to her daughter S.J.B. ("Child"), raising two points, the nature and disposition of which obviate our need to detail a sad and sordid factual backdrop that the concurring opinion describes in some detail.

Here, it is enough to note that J.B. is a low-functioning person (IQ 69) whose stepfather, a registered sex offender, sexually abused her as a child, then impregnated her as an adult. Child was prematurely born of that union; spent a month in NICU; then was transferred to Children's Division custody and care due in part to J.B.'s hospital behavior. Ultimately, upon petition and after a hearing, the court terminated J.B.'s parental rights, finding as statutory grounds therefor both abuse/neglect (§ 211.447.5(2)) and failure to rectify (§ 211.447.5(3)), and that such termination was in Child's best interest.[1]

J.B. appeals from this judgment. We take her points in reverse order.

### Point II

J.B. challenges the court's findings on (1) the abuse/neglect ground for termination, and (2) Child's best interest. The abuse/neglect complaint fails for two reasons. First, J.B.'s

> failure to challenge [both] grounds upon which the trial court terminated her parental rights makes it unnecessary for this court to review her allegations of error concerning the court's termination on the basis of abuse and neglect, since the existence of only one of the grounds is necessary to uphold the termination.

*In re W.T.O.*, 85 S.W.3d 756, 757 (Mo. App. 2002). Second, in *Murphy v. Carron*[2] terms, J.B. necessarily is challenging either the sufficiency or weight of the evidence supporting the abuse/neglect find-

---

1. Statutory citations are to RSMo as amended through 2016.

2. 536 S.W.2d 30, 32 (Mo. banc 1976).

ing. In either case, disregard for the analytical mandates of **Houston v. Crider**, 317 S.W.3d 178 (Mo.App. 2010), and its progeny renders J.B.'s arguments analytically useless. *Compare* **In re Adoption of I.M.W.**, 522 S.W.3d 301, 306-08 (Mo.App. 2017).

**Houston** noncompliance likewise dooms J.B.'s evidentiary challenge to the best-interest finding. Nonetheless, we have gratuitously reviewed the record and are satisfied that the best-interest finding is supported by the record as we must view it, in the light most favorable to the judgment. *See* **In re I.R.S.**, 445 S.W.3d 616, 617 (Mo. App. 2014). Point II fails.

### Point I

■ J.B. claims error in admitting a 18-month-old psychological evaluation that she urged at trial was dated enough "that that evaluation is not dispositive in this case. And we presented case law that showed that it would not be dispositive," to which the court replied:

> but that's a different issue than admissibility, whether or not it is dispositive or binding upon the Court. The Court believes—
>
> [OTHER COUNSEL]: That goes to the weight of the evidence, Your Honor.
>
> THE COURT: The Court believes that it would be admissible evidence to be considered along with all the other evidence in this case. So the motion in limine will be overruled.

J.B. makes no effort on appeal to show how that ruling was wrong in such context, let alone so illogical, unreasonable, and ill-considered as to constitute an abuse of judicial discretion, which is our standard for relief. *See* **S.F.M.D. v. F.D.**, 477 S.W.3d 626, 636 (Mo.App. 2015). Other arguments on appeal are not preserved because an appellant cannot alter or broaden the scope or nature of her objections asserted at trial. *See* **Mitchell v. Wilson**, 496 S.W.3d 579, 583-84 (Mo.App. 2016); **Blanks v. Fluor Corp.**, 450 S.W.3d 308, 384 (Mo.App. 2014). Point denied. Judgment affirmed.

Nancy Steffen Rahmeyer, P.J., concurring.

I concur in the majority opinion, but write separately because I am so appalled at the facts that have led to this case. I write separately so that J.B. will know the reason she has lost her right to parent this child. To begin with, J.B. is the first victim in this case. J.B. ("Victim") resided with her stepfather ("Perpetrator") from the time she was three years old until she was ten years of age. At that time, she was placed in foster care after her step-father admitted during his guilty pleas in two criminal cases that he had sexual intercourse with both Victim and her 13-year-old sister, without their consent. Perpetrator pled guilty to two class C felony counts of sexual assault, **was placed on probation for five years**, and returned to live with Victim's mother. While Victim's mother and Perpetrator were allowed to resume their lives, Victim moved to various foster and group homes. At one point, Victim was removed from her grandmother's home because her grandmother had allowed Victim to visit her mother and Perpetrator. After nine years as a ward of the State, Victim was ready to leave the system. Victim's mother finally divorced Perpetrator in order for Victim to return to her mother's home after Victim was released from Juvenile Court custody at age 19; however, Mother and Perpetrator were still involved. In fact, in the following years, Perpetrator fathered three children by Victim's sister. All three of the children were removed from Victim's sister and her parental rights were terminated to those children due to Perpetrator's involvement in Victim's sister's and mother's lives.

Victim continued to live with Mother and, during a visit to a casino, Victim and Perpetrator had intercourse and Victim conceived S.J.B. ("Child"), who is the subject of this termination hearing. Perpetrator drove Victim to the hospital when she developed a pregnancy complication and subsequently delivered Child; he also remained in contact with Victim's mother until well after Child went into foster care. Victim's history included borderline intellectual functioning and bipolar disorder, and she collects social security for her mental disability. Because Child weighed less than four pounds at birth, she was taken to the neonatal intensive care unit. The hospital specialists indicated that Victim had learning disabilities with slow speech and difficulty being able to express herself. She also became agitated and aggressive in labor and delivery, yelling to the staff that she was bipolar and had not had medication for a week and "what did they expect."

At the time of Child's birth, Victim seemed to recognize the problem of admitting that Perpetrator was the father of Child. She lied to one nurse saying that the father of Child was a drug addict she met at a casino and with whom she had a one-night stand.[1] The hospital staff became concerned and requested a Newborn Crisis Assessment and referral to Lawrence County Children's Division ("the Children's Division"). Victim told another nurse that her step-father was waiting in the parking lot to pick her up but did not want to come into the hospital to see the baby because he was a sex offender. She told the nurse that the Children's Division thought he was the father of Child but that could not be true because he could not

have babies, could not "get a hard on," and had prostate problems.

At that time, the staff was concerned about Victim's ability to take care of Child because Victim was loud, not receptive to infant cues, disrespectful to the medical staff, and seemed unable to understand the special needs of a premature child, even threatening to leave against medical advice. The staff and the Children's Division were also concerned about Victim's statements that she would allow Perpetrator to see Child whenever he wanted to see her. Child was taken into protective custody.

Eventually, Victim finally admitted that Perpetrator was the father of Child and entered a service agreement. She completed a psychological and parenting evaluation done by Dr. Ted Wunderlich. The evaluation indicated Victim's low mental ability. The court changed the permanency goal to the termination of parental rights and ultimately, after conducting a trial, terminated Victim's parental rights to Child. The court found Victim had "permanent, persistent, and not likely to be reversed" intellectual conditions having little ability to foresee future problems and complications. The court found Victim "would require considerable or near constant supervision or input to parent [Child] in a safe and healthy manner." The court concluded that the person who would provide the supervision to Victim for Child was Victim's mother, a mother who continued in a relationship with the admitted sexual predator of her children and the man who fathered her children's children.

Once again, Victim, a woman of limited intellectual ability, who must rely upon her mother to assist her in the care of her own child, was not protected by those whose help she needed. It is the presence of

1. The trial court ordered paternity testing to determine the identity of Child's father. The man from the casino alleged by Victim to be

the father submitted to paternity testing and was found to have 0% probability of paternity.

Perpetrator in her mother's life that is the cause of the harm to Victim. There is no question that if Victim had someone responsible in her life that this case could have had a different ending. Sadly, it does not.

Victim needs to know that it was not a technicality that keeps her from addressing her issues in this Court. In her first point, Victim claims the evaluation done by Dr. Wunderlich should not have been admitted into evidence because she claims the evaluation was eighteen months old and, thus, does not show her mental condition at the time of the termination; she further claims it was prejudicial to her. The admission of evidence is reviewed for an abuse of discretion. *S.F.M.D. v. F.D.*, 477 S.W.3d 626, 636 (Mo.App. W.D. 2015).

> In order to be admissible, evidence must be both logically and legally relevant. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). "Evidence is logically relevant if the evidence tends to make the existence of material fact more or less probable." *State v. Quick*, 334 S.W.3d 603, 609–10 (Mo.App. 2011) (citing *Anderson*, 76 S.W.3d at 276). "Evidence is legally relevant if its benefits outweigh its costs, including unfair prejudice, confusion of the issues, undue delay, waste of time, or cumulativeness." *Id.*

*Id.* at 644. As the judge noted, there is a difference between the admissibility of the psychological exam and the weight to be given the exam. Victim claims the report was too remote in time to be logically relevant; however, the court was obligated to consider Victim's mental capacity. The only evidence before the court indicated that Victim's mental capacity was not variable—that she was on total disability because of her mental condition. The report was relevant to Victim's ability to care for Child. The court needed to have informa-

tion about Victim's mental functioning. Further, as noted above, Victim's parental rights were not terminated on the basis of the psychological exam alone.

Victim also claims the trial court erred in terminating her parental rights because there was no evidence of abuse or neglect by Victim. Victim notes that the presenting problem of the premature birth is no longer present and further points to the evidence that she has moved from her Mother's home and that she no longer believes that Child should have contact with Perpetrator. She claims she would call the police if he ever shows up. She also points to her change of medications that has helped with the control of her past anger issues. The problem with such evidence is that the trial court is in the position to make credibility findings. Credibility of witnesses was for the trial court's determination. *In re Adoption of C.M.*, 414 S.W.3d 622, 629 (Mo.App. S.D. 2013). The trial court was free to believe that Victim's change in behavior was too little, too late, and perhaps not long lasting. Her attorney did an admirable job of seeing the issue, of Victim's dependence on her mother and trying to rectify it, but Victim waited too long to distance herself from Mother's home and Perpetrator.

As noted above, the primary barrier to the return of Child is the need for and the lack of support Victim has to help her parent Child. Had Victim been able to find support from someone other than her mother and Perpetrator immediately before and after her child went into foster care and then been able to provide a pattern of appropriate care for longer than the three months before trial, Victim may have prevailed. As sad as it is for Victim, those charged with caring for and helping her have let her down. The one thing that is certain is Perpetrator should not be allowed around Child. Unfortunately, for

Victim, the only way to assure that Child will not also be a victim of Perpetrator is to keep Child away from Victim. It is a sad and sordid factual backdrop.